## FOWLER v. CALIFORNIA TOLL-BRIDGE AUTHORITY.

No. 9992.

Circuit Court of Appeals, Ninth Circuit.

June 3, 1942.

Daniel V. Ryan and Thomas C. Ryan, both of San Francisco, Cal., for appellant.

Leo A. Cunningham, of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The appellant filed complaint in the court below against the appellee, alleging jurisdiction as follows:

"That the defendant, California Toll Bridge Authority, is a public board and agency of the State of California, duly created by the Statutes of California, Statutes of 1929, page 1489 and amendments thereto (Act 956 General Laws 1937); that said act provides that the defendant may be sued in its own name; that defendant has its place of business and is a resident of the state of California; that plaintiff is a resident and citizen of the state

of Louisiana; that the matter in contro-versy herein exceeds, exclusive of interest and costs, the sum of Three Thousand Dollars ($3,000.00)."

The plaintiff then alleged, for his cause of action, that he had prepared plans for a: bridge to be built across San Francisco Bay; that the structure was to cost in excess of $75,000,000; that he was the sole owner of such plans; that defendant appropriated and used said plans, prepared by plaintiff, without his consent and constructed said bridge as delineated in said plans. The plaintiff prayed judgment for more than $2,500,000.

The defendant moved to dismiss, which motion was granted by the trial court upon the ground of lack of jurisdiction, said court stating, in part, "the defendant is in reality the State of California. Since there is no diversity of citizenship, there is no jurisdiction in this court." The plaintiff appeals.

 It is at once apparent that the jurisdiction of the court below, if such exists, rests solely upon diversity of citizenship, for no Federal question is presented by the complaint. The only question, therefore, is whether the defendant is in reality the State of California. If so, the court was without jurisdiction and the order of dismissal must be affirmed, because a State is not a "citizen" (Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231), the required diversity of citizenship not being present.

The Act of the California State Legislature creating (and the amendatory acts)[1] the California Toll Bridge Authority should reveal whether the Authority is a separate entity and suable as such in the Federal courts, or is merely a channel through which the State of California, the real party in interest, performs part of its necessary governmental functions. The Authority was created, as stated in Section 1 of the Act, to effectuate "the policy of the state of California to acquire and own all toll-bridges situated upon or along any part of the highway of the state, with the end in view of ultimately eliminating all toll charges." The trial court in its opinion aptly summarized the pertinent provisions of the Act and we take the liberty of quoting part thereof:

"The Authority consists of a board of five members, all state officials, acting without compensation. The Authority, in conjunction with the Department of Public Works of the State, determines upon the necessity and desirability of acquiring or constructing any particular toll bridge or other toll highway crossing. If its determination is favorable to the acquisition or construction of any such toll bridge or toll crossing, the Authority is empowered to direct the Department of Public Works to proceed therewith for and in the name of the State, of California, and to issue revenue bonds to finance the same. These bonds are issued in the name of the California Toll Bridge Authority, and are secured wholly by lien upon the tolls and other revenue obtained from the operation of the particular toll bridge or crossing for the acquisition or construction of which the bonds are issued, and do not constitute obligations of the State. The bonds are signed by the Director of Public Works and countersigned by the Governor. The proceeds from the sale of bonds are paid into the State Treasury and credited to a fund designated the acquisition and construction fund, and used primarily for that purpose. Disbursements from this fund are made upon demand of the Department of Public Works upon warrants drawn by the State Controller. The Department of Public Works, acting for and in the name of the State of California, has charge of the designing, acquisition and construction of all such toll bridges and other toll highway crossings, and of such transportation facilities connected therewith as may be authorized by The Authority, and of the operation and maintenance of the same. All tolls or other revenue received from the operation of any toll bridge or toll highway crossing are collected by the Department of Public Works and paid into the State Treasury. These funds are disbursed primarily for purposes of bond redemption and interest payments upon warrants drawn by the State Controller at the request of the Treasurer, and for purposes of acquisition, construction, operation and maintenance of toll bridges and toll highway crossings upon demand of the, Department of Public Works upon warrants drawn by the State Controller. * * *"

Directly in point is the case of Kansas City Bridge Co. v. Alabama State Bridge

[1] General Laws of California, 1931, p. 440, Act 956; Supps.1933, p. 1183; 1935, p. 575; 1937, p. 504.

Corporation, 5 Cir., 59 F.2d 48, 49, 50, where the appellate court affirmed a judgment in favor of defendant on demurrer urging the suit was one against a state, and which we think is indistinguishable from the instant case in its essentials. The court held:

"It is clear that the whole purpose of the act was to erect bridges essential to the highway system, to pay for them with tolls, and then to make them free for the use of the public. It is well settled that the construction of public roads and bridges is a governmental function. * * * The state may either perform this function in its own name or through its public officers or one of its governmental agencies. * * * The Alabama Bridge Corporation was but an agency or instrumentality through which the state acted in causing its public bridges to be constructed. It was not a private corporation in any sense of the word, but state officials, who might as well have been designated a board or commission, were ex-officio members, and the only members, of it. * * * In the nature of things the state had to choose some such agency in order to effectuate its purpose. * * *

"We are of opinion, therefore, that this is a suit against the state of Alabama. * * *"

See, also, State Highway Commission v. Kansas City Bridge Co., 8 Cir., 81 F.2d 689.

We again quote a portion of the exhaustive opinion of the court below:

"In all its functions, the Authority is representing and assisting the State in the performance of a traditional governmental function, that of building, operating and maintaining bridges and highway crossings as a part of the government system of state highways. The Authority is not a distinct and separate entity embarked upon a profit making commercial enterprise in competition with private citizens. The Authority owns no property. The bridges belong to the State. It has no capital stock. It derives no income to itself. All tolls and revenues received from the operation of the bridges are paid into the State Treasury and become state funds. The members of the Authority are all state officials none of whom receive any compensation for the services they perform as members of The Authority in addition to their regular salaries received for their services to the State. * * *"

The appellant argues that the bonds issued by the Authority do not constitute debts of the state (California Toll Bridge Authority v. Wentworth, 212 Cal. 298, 298 P. 485) and that, under Hunkin-Conkey Construction Co. v. Pennsylvania Turnpike Commission, D.C.Pa., 34 F.Supp. 26, by reason of this fact and because the Pennsylvania act is "almost identical" with the California act, the Authority is a separate entity from the state. The Pennsylvania Turnpike case, supra, appears to us to be clearly distinguishable on the facts. That opinion (34 F.Supp. at page 28) states that the Pennsylvania Turnpike Commission had the power to "take title to property," and to "employ men to collect" the tolls, and to provide for the maintenance of the turnpike. In our case the title to the property constructed or acquired is in the State of California, and the construction or acquisition is by the state department of public works, which has full charge of the operation and maintenance of the toll bridges and the collection of tolls thereon. General Laws of California, 1931, and amendments, Act 956, §§ 4, 8.

 This action is, in effect, against the State of California, and the District Court was without jurisdiction to entertain the same. The judgment of the court below is, therefore,

Affirmed.