**MISSOURI PACIFIC RAILROAD COMPANY**

v.

**The TRAVELERS INSURANCE COMPANY and Greater Baton Rouge Port Commission.**

**Civ. A. No. 66–93.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.
March 12, 1968.

Everett R. Scott, Jr., Kaufman, Anderson, Leithead, Scott & Boudreau, Lake Charles, La., for plaintiff.

William A. Norfolk, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for defendants.

WEST, District Judge:

This suit, brought by Missouri Pacific Railroad Company against the Greater Baton Rouge Port Commission and its insurer, The Travelers Insurance Company, seeks to recover the sum of $37,-621.40 paid by plaintiff to one of its employees in compromise of a personal injury claim. The plaintiff seeks this recovery on the basis of an indemnity agreement which was entered into between the Railroad and the Port Commission in December of 1956, and which was in full force and effect on the date of the accident on November 6, 1964. Following the accident the injured employee, B. J. Arnaud, made claim against plaintiff under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. On January 10, 1966, this claim was settled by compromise when the plaintiff paid the sum of $37,621.40 to Mr. Arnaud. Defendants had been timely notified of the accident, and were notified of the claim made by Arnaud. They were also notified of the settlement but refused to participate therein. Plaintiff now contends that under the contract of December 31, 1956, it is entitled to be indemnified by defendants for the full amount of this settlement payment. Plaintiff seeks to invoke the jurisdiction of this Court first under the theory that the claim arises under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. thus raising a federal question, and secondly, under the diversity provisions of 28 U.S.C.A. § 1332.

Defendants filed a motion to dismiss for lack of jurisdiction and it is this motion which is now before the Court.

After due consideration, it is my opinion that this Court does not have jurisdiction over this case.

It is obvious that this case is not one involving a federal question such as would be raised by a claim arising under the Federal Employers' Liability Act. That Act was the source of Arnaud's claim against the plaintiff, but surely it is not the basis of plaintiff's claim against the defendants here. Plaintiff's only chance of recovering from the defendants in this suit the amount of the payment made by it to Arnaud rests with the alleged indemnity agreement dated December 31, 1956, and entered into between the Railroad and the Port Commission. Arnaud was not an employee of the Port Commission and had no F.E.L.A. claim against it. His claim was against the Railroad, and if the Railroad can recover at all from the Port Commission, it must do so on the basis of the alleged contractual indemnity agreement. Thus there is certainly no federal question presented here such as could invoke the jurisdiction of this Court.

If jurisdiction is present it must be found under the diversity provisions of Title 28 U.S.C.A. § 1332. In order for there to be diversity under that section, the action must be between "citizens" of different states. The plaintiff, Missouri Pacific Railroad Company, is, for the purposes of jurisdiction, a citizen of the State of Missouri. The question here presented is whether or not the Greater Baton Rouge Port Commission is a "citizen" of the State of Louisiana. It

cannot be gainsaid that a suit between a state and a citizen of another state is not, for jurisdictional purposes, a suit between citizens of different states under 28 U.S.C.A. § 1332. Postal Telegraph Cable Company v. State of Alabama, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231; Arctic Maid Fisheries, Inc. v. Territory of Alaska, 297 F.2d 28 (CA 9—1961); Broadwater-Missouri Water Users' Association v. Montana Power Company, 139 F.2d 998 (CA 9—1944). And even though a state, on behalf of one of its agents, may, in certain instances, waive the immunity from suit created by the Eleventh Amendment to the United States Constitution, such a waiver cannot thereby create diversity jurisdiction if the agency involved is not in fact a "citizen." Such a waiver, if made, might enable the agency to be sued in the state court, but if the agency is, in fact, the alter ego of the state, or simply an agency thereof, the waiver would not create federal jurisdiction since no diversity of citizenship would exist. In diversity actions, whether the agency is in fact the state itself, or instead, an independent agency thereof, is a question of federal law. State Highway Commission in Arkansas v. Kansas City Bridge Company, 81 F.2d 689 (CA 8—1936); NA-JA Construction Corporation v. Roberts, 259 F.Supp. 895 (D.Del.— 1966); DeLong Corporation v. Oregon State Highway Commission, 233 F.Supp. 7 (D.Or.—1964), aff'd 343 F.2d 911 (CA 9—1965), cert. den. 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119; Zeidner v. Wulforst, 197 F.Supp. 23 (E.D.N.Y.— 1961).

As stated in the case of S. J. Groves & Sons Company v. New Jersey Turnpike Authority, 268 F.Supp. 568 (D.N.J.— 1967):

"In such cases, the court must examine 'the essential nature and effect of the proceedings' to determine whether the state is the real party in interest against whom relief is sought. * * * This depends on the facts and considerations in each case. Pennsylvania Turnpike Comm. v. Welsh, 188 F.2d 447 (3rd Cir. 1951). * * * Whether other bodies [such as the Port Commission] come under the Amendment depends on their relationship to the State, on the powers and responsibilities, the attributes and limitations, with which they have been endowed."

After considering the facts of the particular case involved, the Court in *Groves* concluded that a suit against the New Jersey Turnpike Authority was not a suit against the State of New Jersey, and that, for the purposes of jurisdiction, the Turnpike Authority was a citizen of the State of New Jersey rather than the alter ego of the State itself. In arriving at this conclusion the Court noted that it had considered numerous decisions of the New Jersey courts as well as state and federal decisions of other jurisdictions, and particularly noted the functions of the Turnpike Authority and the powers and duties possessed by it. The Court found the Turnpike Authority to be an independent public authority authorized to exercise a number of powers free of any substantial legislative supervision. It found that the authority could, among other things, issue revenue bonds and otherwise incur debts without in any way involving the full faith and credit of the State of New Jersey, and without in any way incurring any liability therefor on behalf of the State. As a matter of fact the State specifically disclaimed any and all liability for all debts of the Turnpike Authority. The Court also found that the Turnpike Authority had the right to acquire property by eminent domain or otherwise, and that all such property acquired is acquired in its own name and title to the property remains with the Turnpike Authority and not with the State. The Court further found that the act creating the Turnpike Authority specifically designated it as a "body corporate and politic" and specifically granted it the right "to sue and be sued." The Court concluded:

"In summary, New Jersey has created a public Corporation with substantial

fiscal and managerial autonomy and has insulated the State treasury from the Authority's obligations and liabilities. The Authority acquires property, enters contracts and sues on its own behalf, but for organizational purposes it is pigeonholed in the State Highway Department. That it performs an essential governmental function as an instrumentality of the State is *not* disputed. Nevertheless, New Jersey courts repeatedly have held that its fortunes were not so closely tied to the State as to make it a mere nominee or alter ego. In light of all these factors, the Authority is not protected by the Eleventh Amendment as a matter of Federal law." 268 F.Supp. at p. 578.

The present case is easily distinguishable from the *Groves* case. For example, unlike the situation in *Groves* both the Amendment to Article VI, Section 29, of the Louisiana Constitution providing for the creation of the Greater Baton Rouge Port Commission and the Act of the Legislature, LSA–R.S. 34:1223, implementing the constitutional amendment, specifically provide that "Title to all property and improvements thereon operated by the commission shall vest in the State of Louisiana." Also, unlike the *Groves* case, both the constitutional amendment and the legislative act creating the Greater Baton Rouge Port Commission, provide that the full faith and credit of the State of Louisiana is behind all debts incurred by the Commission. Also, neither the constitutional amendment nor the legislative act creating the Commission gives it the right to sue or be sued.

That the Greater Baton Rouge Port Commission is the alter ego of the State of Louisiana rather than a citizen thereof has been repeatedly recognized by the Courts of Louisiana. In Miller v. Greater Baton Rouge Port Commission, 225 La. 1095, 74 So.2d 387 (1954), the Supreme Court of Louisiana said:

"The Port Commission is an Executive Department of the State and the term notes or bonds issued by it are the primary obligations of the State and the payment of same is not limited to a special fund. * * * The grant of authority to the Port Commission to issue bonds and notes contemplates and conclusively implies that the power exists to discharge the obligations so incurred *by the State* by taxation or otherwise since no contrary intention is manifested." (Emphasis added) See also Greater Baton Rouge Port Commission v. Morley, 232 La. 87, 93 So.2d 912 (1957); Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901 (1953).

The Court, in *Miller*, specifically found that:

"The Port Commission is not a corporation but an Executive Department of the State." 74 So.2d at p. 390.

The provisions of the constitutional amendment and the legislative act creating the Port Commission clearly support the holding of the Louisiana Supreme Court that the Commission is, in fact, an executive department of the State of Louisiana and thus the alter ego of the State, and thus it is not a "citizen" of the State such as to invoke the diversity jurisdiction of this Court.

Plaintiff argues that when, by the provisions of LSA–R.S. 34:1223, the Commission was given the authority to enter into contracts, leases and other agreements with railroads, such a grant carried with it the implied provision that such contracts, leases, or other agreements entered into by the Commission would be legally enforceable agreements. I do not intend to hold here that the agreement between the Port Commission and the Railroad is unenforceable. I merely conclude that it is unenforceable in this Court because there is no federal question involved and there is no diversity of citizenship such as to invoke the jurisdiction of this Court. Whether or not the granting of the right to the Greater Baton Rouge Port Commission to enter into contracts, leases, and other agreements carries with it the implied waiver of immunity from suit on such

**104**

contracts, leases or agreements is a matter for the proper State Court to determine. The fact remains that this Court does not have jurisdiction over this matter and hence this suit must be dismissed at plaintiff's cost. Judgment will be entered accordingly.