GEORGE R. WHITTEN, JR., INC., d/b/a
Whitten Corporation, Plaintiff,
Appellant,

v.

STATE UNIVERSITY CONSTRUCTION
FUND, Defendant, Appellee.

No. 73-1190.

United States Court of Appeals,
First Circuit.

Argued Oct. 2, 1973.

Decided March 8, 1974.

---

14. Braden v. Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed. 2d 443, 449 (1973).

15. See note 3, supra.

Frank T. Barber, III, Boston, Mass., with whom John E. Lecomte and Lecomte, Shea & Gould, Boston, Mass., was on brief, for appellant.

Barry L. Radlin, Associate Atty., Albany, N. Y., with whom Ruth Kessler Toch, Sol. Gen., and Louis J. Lefkowitz, Atty. Gen. of the State of New York, were on brief, for appellee.

Before COFFIN, Chief Judge, Mc-ENTEE and MOORE,* Circuit Judges.

MOORE, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Massachusetts (Julian, J.), dismissing the plaintiff's complaint due to lack of subject matter jurisdiction and the defendant's Eleventh Amendment immunity from suit.[1] Plaintiff-appellant, George R. Whitten, Jr., Inc., d/b/a Whitten Corporation (hereafter Whitten), a Massachusetts corporation, is a manufacturer and installer of swimming pool recirculation systems. Whitten generally sells these systems to public bodies and institutions for use in large swimming pools. Defendant-appellee, the New York State University Construction Fund (hereafter SUCF), is a New York "public benefit" corporation created by statute, N.Y.Educ.L. §§ 370–384 (McKinney's Consolidated Laws of New York, Annotated Book 16, Education Law, 1969) (hereafter McKinney) and charged "to provide academic buildings, dormitories and other facilities for the state-operated institutions . . . under the jurisdiction of the state university. . . ." N.Y.Educ.L. § 372 (McKinney 1969).

SUCF prepared a study of the various kinds of pool recirculation devices, reviewing each type's pros and cons. It then entered into a contract for the distribution of the study with a competitor of Whitten, Paddock Pool Builders, Inc., a New York corporation. The contract provided that Paddock could distribute the study where it wished, but that Paddock would hold SUCF harmless from any damages arising from its distribution.

Paddock distributed several copies in Massachusetts. The study is alleged to contain false and misleading statements concerning Whitten's product. Whitten contends that it has suffered irreparable harm from the circulation of the study.

* Of the Second Circuit, sitting by designation.

1. Plaintiff also appealed from an order denying its motion for leave to use depositions taken in a prior action. However, the present decision on the jurisdictional issue renders any consideration of the former question unnecessary.

Suit was brought against SUCF in the District Court for Massachusetts on the basis of diversity of citizenship. 28 U.S.C. § 1332. The court below dismissed the complaint "on the grounds of lack of jurisdiction over the subject matter and Eleventh Amendment immunity from suit." This appeal is from that dismissal.

After some 67 pages of debate between Court and counsel for the respective parties as to whether the Court should consider the motion as a motion to dismiss (Rule 12, F.R.Civ.P.) or a motion for summary judgment (Rule 56), the parties agreed that the motion should be considered as one for summary judgment. (Tr. 168–73). As for the fundamental issue, appellant's counsel said, ". . . if you [the Court] decide that the SUCF . . . is clothed with the immunity of the State, and is entitled to the Eleventh Amendment immunity, then I'm out." (Tr. 169).

The judge below, by granting the motion, found that SUCF was an "alter ego" of the State of New York and barred the suit on the allied grounds of Eleventh Amendment immunity and lack of requisite diversity of citizenship.[2] Thus it is this characterization of SUCF that forms the key issue for review.

The test of whether a State organization can be sued in a federal court is the presence or non-presence of the State as the real party in interest. State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929); Krisel v. Duran, 386 F.2d 179 (2d Cir.), cert. denied, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1967). In making this determination, the courts have considered a variety of factors: ability to sue and be sued,[3] lack of express authority to sue,[4] performance by the entity of an "essential government function",[5] power to take property in the name of the State,[6] power to take property in its own

---

2. A determination that the defendant is an "alter ego" of the State makes the complaint run afoul of the Eleventh Amendment, and also prevents the presence of the requisite diversity required by 28 U.S.C. § 1332 (1970). *See* Fabrizio & Martin Inc. v. Board of Education, 290 F.Supp. 945 (S.D.N.Y.1968).

Appellant also raised the issue of sovereign immunity. These three doctrines, sovereign immunity, Eleventh Amendment immunity and lack of citizenship for the purposes of 28 U.S.C. § 1332 (1970), are closely allied and yet not identical. Eleventh Amendment immunity merely extends this immunity to suits against the State by any citizen of the United States. Missouri v. Fiske, 290 U.S. 18, 24, 54 S.Ct. 18, 78 L.Ed. 145 (1933); Gunter v. Atlantic Coast Line, 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477 (1906); Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883). However, waiver of the first immunity is not generally a waiver of the second, Ford Motor Co. v. Dep't of Treasury of Indiana, 323 U.S. 459, 464–65, 65 S.Ct. 347, 89 L.Ed. 389 (1945). What may not be waived is lack of citizenship for the purposes of 28 U.S.C. § 1332; State Highway Comm. of Wyoming v. Utah Contr. Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929); Krisel v. Duran, 386 F.2d 179 (2d Cir.), cert. denied, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1967).

3. Krisel v. Duran, 386 F.2d 179 (2d Cir.), cert. denied, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1967); Kansas Turnpike Authority v. Abramson, 275 F.2d 711 (10th Cir.), cert. denied, 363 U.S. 813, 80 S.Ct. 1250, 4 L.Ed.2d 1154 (1960) (tending to show jurisdiction); State Highway Comm. v. Utah Constr. Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929); Broadwater Missouri Water Users' Assoc. v. Montana Power Co., 139 F.2d 998 (9th Cir. 1944); West Virginia v. Haynes, 348 F.Supp. 1374 (S.D. W.Va.1972); McDevitt & Street Co. v. Georgia Bldg. Auth., 343 F.Supp. 1238 (N.D.Ga. 1972) (not tending to show jurisdiction).

4. Missouri Pac. R. Co. v. Travelers Ins. Co., 281 F.Supp. 100 (D.Ga.1968) (tending to show no jurisdiction); C. H. Leavell & Co. v. Bd. of Comm'rs, 424 F.2d 764 (5th Cir. 1970); George A. Fuller Co. v. Coastal Plains, Inc., 290 F.Supp. 911 (D.La.1968) (implied authority present therefore no bearing on jurisdiction).

5. Fowler v. California Toll Bridge Authority, 128 F.2d 549 (9th Cir. 1942) (tending to show no jurisdiction); Gerr v. Emrick, 283 F.2d 293 (3d Cir. 1960), cert. denied, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961) (not tending to show no jurisdiction).

6. Fowler v. California Toll Bridge Authority, 128 F.2d 549 (9th Cir. 1942); Missouri Pa-

name,[7] corporate status,[8] lack of corporate status,[9] financial interest of the State,[10] and absence of state financial interest.[11] *See* 6 ALR Fed. 615.

Of these factors "ultimate State liability" is the most determinative. Such ultimate liability would rest primarily upon two factors: the degree to which the organization is financially dependent upon the State, and the extent to which the organization performs a State obligation or function. As stated in Breen v. Mortgage Commission, 285 N.Y. 425, 429, 35 N.E.2d 25 (1941):

> The problem, therefore, is to determine who is the real defendant in the case at bar. If the real defendant is the State, then, of course, it may be sued only as it has consented to be sued, to wit, in the Court of Claims.

Since SUCF is dependent upon State appropriations, "[i]t is plain that a judgment obtained against the Commission [here SUCF] would be against the State, since the Commission is only an agent of the State, . . . ." *Breen,* at 430, 35 N.E.2d at 27.

The District Court relied heavily on a recent Federal District Court decision in New York, Charles Simkin & Sons, Inc. v. State University Construction Fund, 352 F.Supp. 177 (S.D.N.Y.1973),[12] the Court stating:

> The threshold question of whether defendant Fund shares the immunity of the sovereign state of New York has been recently answered in the affirmative in Charles Simkin & Sons., Inc. v. State University Construction Fund, 352 F.Supp. 177 (S.D.N.Y.1973). In *Simkin,* the Court granted a motion to dismiss a contract action brought against the instant defendant, holding that the Fund "in its functions, purposes and operations is designed to perform a State obligation and does so as an arm or alter ego of the State." *Id.,* at 179.

A review of the statutory creation of SUCF leads to the conclusion, reached both by *Simkin, supra,* and by the District Court, that SUCF is a State agency and thus immune from suit under the Eleventh Amendment. The New York Legislature made SUCF a part of the State University, which had been created under Article 8 of the Education Law in

---

cific R. Co. v. Travelers Ins. Co., 281 F.Supp. 100 (D.La.1968) (tending to show no jurisdiction) ; Broadwater-Missouri Water Users' Assoc. v. Montana Power Co., 139 F.2d 998 (9th Cir. 1944) (not necessarily showing no jurisdiction).

7. Dep't of Highways v. Morse Bros. & Assoc., Inc., 211 F.2d 140 (5th Cir. 1954) (tending to show jurisdiction).

8. Kansas Turnpike Authority v. Abramson, 275 F.2d 711 (10th Cir. 1960), cert. denied, 363 U.S. 813, 80 S.Ct. 1250, 4 L.Ed.2d 1154 (1960) ; Dep't of Highways v. Morse Bros. & Assoc., Inc., 211 F.2d 140 (5th Cir. 1954) (tending to show jurisdiction).

9. Krisel v. Duran, 386 F.2d 179 (2d Cir.), cert. denied, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1967) ; State Highway Comm. v. Kansas City Bridge Co., 81 F.2d 689 (8th Cir.), cert. denied, 298 U.S. 661, 56 S.Ct. 682, 80 L.Ed. 1386 (1936) (tending to show no jurisdiction) ; C. H. Leavell & Co. v. Bd. of Comm'rs, 424 F.2d 764 (5th Cir. 1970) ; Hunkin-Conkry Constr. Co. v. Pennsylvania Turnp. Comm., 34 F.Supp. 26 (D.Pa.

1940) (not necessarily showing no jurisdiction).

10. State Highway Comm. v. Utah Constr. Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929) ; Dacey v. Florida Bar, Inc., 414 F.2d 195 (1969), cert. denied, 397 U.S. 909, 90 S.Ct. 906, 25 L.Ed.2d 89 (1970) ; DeLong Corp. v. Oregon State Highway Comm., 343 F.2d 911 (9th Cir.), cert. denied, 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965) (tending to show no jurisdiction).

11. Missouri, K. & T. R. Co. v. Missouri R. & Warehouse Comm'rs., 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78 (1901) ; Kansas Turnpike Auth. v. Abramson, 275 F.2d 711 (10th Cir. 1960), cert. denied, 363 U.S. 813, 80 S.Ct. 1250, 4 L.Ed.2d 1154 (1960) (tending to show jurisdiction).

12. *Simkin* was affirmed by the Second Circuit, Docket No. 73–1777 November 16, 1973. However, this affirmance, due to the presence of additional procedural questions and the fact that it was affirmed in open court without opinion, does not necessarily lend any additional support to the holding.

enacting Article 8–A wherein Section 371 provided:

There is hereby created within the state university the "state university construction fund". The fund shall be a corporate governmental agency constituting a public benefit corporation.

Amongst its purposes were "to provide academic buildings, dormitories and other facilities for the state-operated institutions . . . ." (Section 372). Although SUCF has the power to sue and be sued (Section 373(1)), unlike the New York Dormitory Authority, it has no financial independence of its own. Furthermore, as the New York Court of Appeals held in dealing with the Mortgage Commission in *Breen, supra,* at 431, 35 N.E.2d at 27:

From the fact that the Legislature has granted to the Commission the right to sue and has granted to certificate holders and others the right to sue the Commission in proper cases, it does not follow that the State has consented to be sued for a claim against it in the Supreme Court of the State rather than in the Court of Claims. Statutes in derogation of the sovereign immunity of the State to suit are strictly construed.

And in State University of New York v. Syracuse University, 206 Misc. 1003, 137 N.Y.S.2d 916 (S.Ct. Albany County 1954), a Justice of the New York Supreme Court (the court of original jurisdiction) posed the problem before him as "whether the plaintiff [the State University] is only an agency of the State in the performance of its educational functions or has been delegated governmental powers to be exercised apart from State liability. (citing cases)."

After reviewing the legislation creating the State University, the court concluded:

Those statutes indicate that the Legislature intended to create a mere corporate agency within the state's department of education directly to carry out certain of its governmental func-

tions in respect of higher education. As such it has immunity from suit in the Supreme Court. (Citing cases).

The Appellate Division of the New York Supreme Court affirmed, stating:

The court also has dismissed on jurisdictional grounds a counterclaim by Syracuse University asserting a cause of action against State University for money due under the contract. The State University is an integral part of the government of the State and when it is sued the State is the real party. (Citing cases). The Supreme Court has not acquired jurisdiction of the counterclaim.

State University of New York v. Syracuse University, 285 App.Div. 59, 135 N.Y.S.2d 539 (3rd Dept. 1954).

Appellant points to the fact that SUCF has at least twice been sued in the New York State Supreme Court (McKinney, 1969) under Article 78 proceedings, N.Y. C.P.L.R. § 7801 et seq.: Application of Forsythe Plumbing and Heating Corp., 18 App.Div.2d 1124, 239 N.Y.S.2d 172 (3rd Dept. 1963); Renel Construction Inc. v. SUCF, 58 Misc.2d 983, 297 N.Y.S. 2d 344 (S.Ct. Albany County 1969). However, Article 78 proceedings are but a statutory substitute for certiorari, mandamus and prohibition and should not be used to infer lack of governmental status. Newbrand v. Yonkers, 285 N.Y. 164, 33 N.E.2d 75 (1941). It is true that the New York Dormitory Authority, somewhat similar to SUCF in purpose and organization, *compare* N.Y.Pub. Auth.L. § 1675 et seq., McKinney's Consol.Laws, c. 43–A *with* N.Y.Educ.L. § 371 et seq., has been adjudged to be a separate entity for the purposes of suit. Matter of Dormitory Authority, 18 N.Y. 2d 114, 271 N.Y.S.2d 983, 218 N.E.2d 693 (1966); Braun v. State of New York, 203 Misc. 563, 117 N.Y.S.2d 601 (Ct.Cl. 1952). However, the State University, see N.Y.Educ.L. § 201 et seq., specifically has been held not to be so, State University of New York v. Syracuse University, *supra.* The difference between the Dormitory Authority and the State Uni-

versity was stressed in the *Syracuse University* case, the court stating:

> The Dormitory Authority which was held in Braun v. State of New York, 203 Misc. 563, 117 N.Y.S.2d 601, to be an independent state agency not subject to suit in the Court of Claims was a "public benefit corporation * * * existed on a self-liquidating basis * * *." The governmental functions delegated to the corporate instrumentality in that case clearly distinguish it from the one at bar.

137 N.Y.S.2d at 917, 918.

This difference was also carefully analyzed by the District Court in its *Simkin* opinion and the analysis resulted in the conclusion that:

> It is inescapable that the State University Construction Fund in its functions, purposes and operations is designed to perform a State obligation and does so as an arm or alter ego of the State.

352 F.Supp. at 179.

As to subject matter jurisdiction, the *Simkin* court stated:

> Subject matter jurisdiction also is lacking for, to borrow from Fabrizio & Martin Incorporated v. Board of Education, 290 F.Supp. 945, 948 (S.D. N.Y.1968) to sustain jurisdiction, the court must find that the State University Construction Fund is a corporate entity sufficiently independent and separate from the State to carry its own citizenship, and not by this suit, expose the State to financial or other detriment. The court is unable to make those findings under the facts of this case.

Thus, SUCF as a part of, or agency of, the State University, and the State University being an arm of the State, the immunity extended to the State University also embraces SUCF. In our opinion, *Simkin* properly reflects the law with respect to the Eleventh Amendment immunity of, and subject matter jurisdiction over, SUCF and the District Court was correct in relying on its conclusion.

Order affirmed.