**BYRAM RIVER et al., Plaintiffs,**

v.

**VILLAGE OF PORT CHESTER, NEW YORK et al., Defendants.**

**No. 74 Civ. 4059.**

United States District Court,
S. D. New York.

April 8, 1975.

Haynes N. Johnson, Stamford, Conn., for plaintiffs, Byram River, Byram River Pollution Abatement Ass'n, J. A. B. Haughwout.

A. William Mottolese, Greenwich, Conn., for plaintiff, Town of Greenwich.

McKirdy, Riskin & Krieger, Morristown, N. J., for defendants, Interstate Sanitation Comm. and Thomas Glenn.

Louis J. Lefkowitz, Atty. Gen., by Julius Feinstein, Asst. Atty. Gen., Albany, N. Y., of counsel, for defendants, New York State Dept. of Environmental Conservation and James L. Biggane, as Comm'r of New York State Dept. of Environmental Conservation.

Gerald Harris, County Atty., White Plains, N. Y., for defendants, County of Westchester and Alfred B. Del Bello, by F. Sherwood Alexander, Sr. Asst. County Atty., of counsel.

WHITMAN KNAPP, District Judge.

This suit seeks to stop the depositing of inadequately treated sewage into the

Byram River ("the River") by the sewage treatment plant owned and operated by defendant Village of Port Chester. The River (which is named as a plaintiff in the action) is a federal navigable river which forms a portion of the boundary line between Connecticut and New York, and eventually flows into Long Island Sound. The other plaintiffs are the Byram River Pollution Abatement Association, a Connecticut corporation created to protect and improve the quality of the River's water; the Town of Greenwich, Connecticut, a municipal corporation bordering on the River; and J. A. B. Haughwout, an individual who lives on the Connecticut shores of the River, and is allegedly directly and adversely affected in the use of his land because of the pollution.

The defendants are the Village of Port Chester, a municipal corporation of the State of New York, which owns and operates the sewage treatment plant alleged to be polluting the River; the County of Westchester, in which Port Chester is located, and which along with Port Chester bears the primary responsibility for designing and constructing a new sewage treatment plant; Alfred Del Bello, the Chief Executive of Westchester County; the Interstate Sanitation Commission ("Interstate Commission"), a tri-state body established with the approval of Congress to prevent pollution of certain waters including the River; Thomas Glenn, the director of the Interstate Commission; the New York State Department of Environmental Conservation ("DEC"), which establishes standards for the construction of sewage plants and approves such plans; and James L. Biggane, the Commissioner of the DEC.

Plaintiffs allege that all of the defendants are jointly and severally liable for non-feasance in having failed to construct a secondary sewage treatment plant which would abate the pollution of the River. The plaintiffs seek broad equitable and declaratory relief, including an order setting a timetable for comple-

tion of an adequate sewage treatment plant; the appointment of a receiver to supervise the designing and construction of such a facility; a declaration that the defendants have been derelict in their respective duties; and a declaration that under priority guidelines established by the DEC for federal funding of sewage treatment plants, defendant Port Chester would qualify for Federal funding in the current fiscal year.

All of the defendants, except the Village of Port Chester, have filed motions urging that the action be dismissed on a wide variety of grounds. It should be noted that the controversy over who is responsible for the River's pollution has been before courts and agencies for over fourteen years. The River's substandard condition is a matter of record, and none of the defendants in this action are newcomers to the dispute. It was as early as May, 1961 that the Interstate Commission found the River to be polluted and ordered Port Chester to construct new facilities by 1963 to abate the discharge of raw and only partially treated sewage. When Port Chester failed to comply, an action was brought by the Interstate Commission in the New York State courts. In May, 1966, the State Supreme Court ordered facilities to be completed by May, 1968. In February, 1968, the court approved an extension of time until 1971. A further complication arose in December, 1969 when the County of Westchester made Port Chester a part of its newly-created Port Chester Sanitary Sewage District. The County then hired an engineering firm to develop a plan for new facilities, and in April, 1972, the County submitted the proposal for approval to the DEC so that federal and state funding could be arranged. A year later, in April, 1973, the DEC informed the County that the proposal was "not acceptable."

This federal court action was originally filed in the District of Connecticut. In an unreported memorandum decision dated August 21, 1974, Judge Jon O. Newman dismissed the action as to all

defendants other than the Village of Port Chester for lack of *in personam* jurisdiction. In order to allow the plaintiffs to secure relief against all the defendants, he then transferred the case to this district where *in personam* jurisdiction as to all the defendants could be obtained.

Without analyzing all of plaintiffs' various theories of subject matter jurisdiction, it is sufficient to note that federal jurisdiction is properly predicated on 28 U.S.C. § 1331 to consider the claim of a nuisance upon interstate waters in violation of federal common law. Illinois v. City of Milwaukee (1972) 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712. See also Judge Newman's unreported decision. Of course, if this action is barred by the Eleventh Amendment, as several defendants contend, see discussion, *infra,* then neither 28 U.S.C. § 1331 nor any of plaintiffs' other claimed jurisdictional bases, including the civil rights statute, 42 U.S.C. § 1983, would nullify the protection the constitutional amendment affords the defendants. Edelman v. Jordan (1974) 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662; Rothstein v. Wyman (2d Cir. 1972) 467 F.2d 226, cert. denied 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973).

### I.

The defendants County of Westchester and Alfred Del Bello, the County Executive, move to dismiss the action upon the grounds that the court lacks subject matter jurisdiction over the proceeding, or, in the alternative, that the complaint fails to state a claim upon which relief can be granted. Both contentions must be rejected.

Westchester's subject matter jurisdiction claim is based on the contention that plaintiffs have not complied with Section 52 of the New York State County Law, c. 11, McKinney's Consol. Laws of New York.[1] That provision, which incorporates Sections 50–e and 50–i of the General Municipal Law, c. 24, McKinney's Consol. Laws,[2] requires that

1. Section 52 of the County Law reads as follows:

1. Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law. The place of trial shall be in the county against which the action is brought.

2. No action shall be maintained against an officer, agent, servant or employee of a county unless the notice of claim for damages was filed in the manner and within the time prescribed in subdivision one and also served personally or by registered mail upon such officer, agent, servant or employee within the same period of time.

3. This section shall not apply to claims for compensation for property taken for a public purpose, nor to claims under the workmen's compensation law.

2. Section 50–e of the General Municipal Law reads in pertinent part:

1. In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general corporation law, or any officer, appointee or employee thereof, the notice shall comply with the provisions of this section and it shall be given within ninety days after the claim arises.

2. The notice shall be in writing, sworn to by or on behalf of the claimant, and shall set forth: (1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable.

\*      \*      \*      \*      \*

Section 50-i of the General Municipal Law reads in pertinent part:

1. No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or

before an action against a county or its employees can be brought, a notice of claim must be filed with the county within ninety days after the cause of action accrued. The defendants maintain that the failure to comply with this statutory requirement constitutes a fatal defect which requires the dismissal of the complaint.

■ The difficulty with defendants' argument, is that both defendants have for some time had actual and prompt notice of the claim and this lawsuit. As noted above, the present amended complaint is substantially identical to the complaint filed in the District of Connecticut in November, 1973. In such circumstances it is clear that the defendants are estopped from making an argument under Section 52 of the County Law. McCabe v. Nassau County Medical Center (2d Cir. 1971) 453 F.2d 698.

Defendants' second contention—that the complaint fails to state a cause of action upon which relief can be granted—can be quickly disposed of. The defendants argue that administrative procedures and negotiations between Westchester and the other defendants are now being carried out pursuant to the provisions of the Environmental Conservation Law of New York to accomplish the identical result which plaintiffs seek in this action—the planning and construction of a new sewage treatment plant. They maintain in essence that these administrative remedies should first be exhausted prior to the resort to legal action in the federal courts.

■ In view of the procedural history of this case, such an argument seems frivolous. Administrative proceedings have proven ineffectual for over fourteen years, and the Byram River continues to be a depositary for raw and untreated sewage. While this Court usually grants deference to state administrative procedures, in this situation any further delay in this litigation would be unconscionable. See McKart v. United States (1969) 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194; Eisen v. Eastman (2d Cir. 1969) 421 F.2d 560, cert. denied 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75; Frost v. Weinberger (E.D.N.Y.1974) 375 F.Supp. 1312, 1320.

Accordingly, the motions to dismiss by the County of Westchester and Mr. Del Bello are denied.

## II.

The New York State Department of Environmental Conservation, James Biggane, the Interstate Commission, and Thomas Glenn all seek the dismissal of the complaint on the grounds that the action is barred by the Eleventh Amendment to the Constitution. This motion will be granted only as to the Department of Environmental Conservation.

The Eleventh Amendment to the Constitution states:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of an-

school district for personal injury or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village, fire district or school district or of any officer, agent or employee thereof, including volunteer firemen of any such city, county, town, village, fire district or school district or any volunteer fireman whose services have been accepted pursuant to the provisions of section two hundred nine-i of this chapter, unless, (a) a notice of claim shall have been made and served upon the city, county, town, village,

fire district or school district in compliance with section fifty-e of this chapter, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based.

\*       \*       \*       \*       \*

other State, or by Citizens or Subjects of any Foreign State."

■■■ While the Amendment by its own terms does not bar suits against a State by its own citizens, the Supreme Court has consistently ruled that an unconsenting State is protected from suits brought in federal courts by her own citizens as well as by citizens of another state. Hans v. Louisiana (1890) 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842; Parden v. Terminal R. Co. (1964) 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233; Employees v. Missouri Public Health Dept. (1973) 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251; Edelman v. Jordan (1974) 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662. It is also well settled that even though a state is not named as a defendant in an action, the suit may still be barred by the Eleventh Amendment. As the Supreme Court stated in Ford Motor Co. v. Department of Treasury of Indiana (1945) 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389, and reaffirmed in Edelman v. Jordan, *supra:*

> "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."

Thus, any judgment declaring a liability which must be paid from public funds in the State treasury falls within the ambit of the Eleventh Amendment; and, absent the State's consent, a court will be deemed without jurisdiction to render such an award. Edelman v. Jordan, *supra,* 415 U.S. at 651, 94 S.Ct. 1347, 39 L.Ed.2d 662; Rothstein v. Wyman, *supra,* 467 F.2d at 236.

■ Before applying the foregoing general principles on the Eleventh Amendment to the individual defendants in this action, it is first necessary to comment on two arguments put forth by the plaintiffs for the proposition that the Eleventh Amendment is not applicable in this action. First, all the plaintiffs argue that the Eleventh Amendment does not apply where only equitable relief is sought. Such a contention is, however, untenable in the light of Edelman v. Jordan, *supra,* 415 U.S. at 666–667, 94 S.Ct. 1347, 39 L.Ed.2d 662. The Court there specifically stated that "equitable relief may be barred by the Eleventh Amendment." In an action against a State, the Eleventh Amendment acts as an absolute bar to suit unless the State has waived its immunity. It makes no difference to the Eleventh Amendment in this instance whether the relief sought is monetary damages or a declaratory judgment.

The second argument, which is raised by plaintiff Town of Greenwich, is that the Eleventh Amendment does not apply to a suit instituted by a political subdivision of another state.

As noted above, the Eleventh Amendment by its own terms bars suits commenced against one state "by Citizens of another State." This prohibition has been extended to suits against a state brought by its own citizens. What Greenwich contends is that the term "citizens" means in effect "individuals", and therefore the Amendment would have no application to a suit brought by a political subdivision of another state.

■■ Such a construction, however, would create a significant exception to the Eleventh Amendment, an exception for which we find no support in either the historical purposes behind the Amendment, see Edelman v. Jordan, *supra,* 415 U.S. at 660–662, 94 S.Ct. 1347, 39 L.Ed.2d 662, or in any relevant case law. For example, it is well-settled that for the purposes of diversity of citizenship, political subdivisions are "citizens" of their respective states. Cowles v. Mercer County (1869) 7 Wall. 118, 122, 19 L.Ed. 86. It is equally well settled that a state itself is not a "citizen" for diversity purposes. Postal Telegraph Cable Co. v. Alabama (1894) 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231. Furthermore, in Lincoln County v. Luning

(1890) 133 U.S. 529, 10 S.Ct. 363, 33 L. Ed. 766, the Supreme Court specifically held that the term "state", as used in the Eleventh Amendment, did not include municipalities or counties of that state.

Finally, the terms "State" and "Citizen" were recently interpreted by the Supreme Court in the case of Illinois v. City of Milwaukee (1972) 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712, in a manner which casts strong doubt on Greenwich's argument. In this case, the State of Illinois had sued four cities within the State of Wisconsin. Illinois argued that these cities were instrumentalities of Wisconsin and that the suit was therefore one against the State and within the original jurisdiction of the Supreme Court, Article III, § 2 of the Constitution.

The Supreme Court rejected the argument and held that "the term 'States' . . . should not be read to include their political subdivisions" (at p. 98, 92 S.Ct. at 1390). The Court then stated (p. 98, 92 S.Ct. at 1390):

> "That, of course, does not mean that political subdivisions of a State may not be sued under the head of our original jurisdiction, for 28 U.S.C. § 1251 provides that '(b) the Supreme Court shall have original but not exclusive jurisdiction of: (3) all actions or proceedings by a State against the *citizens of another State* . . . ' " (emphasis added)

■ It thus seems clear that, for Eleventh Amendment purposes, a municipality like Greenwich should be considered as "Citizens of another State," as are the other named plaintiffs in this suit.

■ Having determined that the Eleventh Amendment is a potential defense to this lawsuit, it is next necessary to see if it is available to any or all of the defendants. Since the Eleventh Amendment has different application to state officers than it has for State agencies, for the sake of clarity, we will treat the individual defendants separately from the DEC and the Interstate Commission.

### A. *Defendant Department of Environmental Conservation*

■ There can be no question that, as to the defendant New York State Department of Environmental Conservation, this action is clearly one against the State of New York. Ford Motor Co. v. Department of Treasury of Indiana (1944) 323 U.S. 459, 65 S.Ct. 347, 89 L. Ed. 389; Employees v. Missouri Public Health Dept. (1973) 411 U.S. 279, 93 S. Ct. 1614, 36 L.Ed.2d 251. The DEC was created by the New York State legislature in 1970 to carry out the environmental policy of the State as enunciated in Section 1–0101 of the Environmental Conservation Law, c. 43–B, McKinney's Consol.Laws of New York. See also ECL § 3–0301 and § 51–0101 et seq. There can be no doubt that the DEC was created to perform an essential governmental function, and that the State itself is the real party in interest in any action involving this department. See, Forman v. Community Services, Inc. (2d Cir. 1974) 500 F.2d 1246; Whitten v. State University Construction Fund (1st Cir. 1974) 493 F.2d 177 (Moore, J.).

■ The plaintiffs argue that even if immunity were found to exist, the State has waived that immunity by entering into the tri-state compact which required congressional approval, and by becoming involved with the federal water pollution abatement assistance program. See § 51–0101 et seq. of the Environmental Conservation Law.

In taking this position, plaintiffs apparently rely on a line of cases stemming from Petty v. Tennessee-Missouri Bridge Commission (1959) 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804, and Parden v. Terminal Railway Co. (1964) 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233, which supposedly stand for the proposition that by entering into a sphere of activities subject to federal regulation, a state waives its immunity from suit.

Such a bald proposition, however, misinterprets the *Petty* and *Parden* cases, and misstates the applicable law. As the Supreme Court stated in Edelman v. Jordan, *supra*, 415 U.S. at 673, 94 S.Ct. 1347, at 1361, 39 L.Ed.2d 662, in deciding whether a State has waived its constitutional protection under the Eleventh Amendment, a court must look for express language or other form of overwhelming intent on the part of Congress to effect such a result.

> "The mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts."

In this case, we do not find any indications in the federal environmental legislation that Congress intended to abrogate the Eleventh Amendment immunity in question, and no such indications that New York State had so consented to be sued in a federal forum by its participation in that program. Accordingly, DEC's motion to dismiss will be granted.

## B. *Defendant Interstate Commission*

The Interstate Sanitation Commission also seeks the protection of the Eleventh Amendment. This tri-state agency was created by compact among the states of New York, New Jersey and Connecticut pursuant to Environmental Conservation Law § 21–0501 et seq.; New Jersey Statute Annotated 32:18–1 et seq.; and Connecticut General Statutes Annotated 25–55 et seq. In accordance with Art. I, § 10, cl. 3 of the Constitution [3] Congress approved the compact in 1935. Public Resolution # 62, 74th Congress, August 27, 1935, c. 779, 49 Stat. 932.

The Interstate Commission's principal purposes include the control and abatement of pollution in the harbors and coastal, tidal, tributary and estuary waters in the three signatory states, and its jurisdiction includes the River. The Interstate Commission does have enforcement power to bring suit against any municipality or other subdivision of the three states in order to prevent pollution. See ECL § 21–0507. Article XI [4] of the compact specifically gives the Interstate Commission the authority "to bring action in its own name in the proper court or courts to compel the enforcement" of the provisions of the compact or the orders of the Interstate Commission. It should be noted that the Interstate Commission is not expressly limited to bringing suit in the state courts.

There are three basic questions that have to be resolved before the Interstate Commission can succeed on this motion. First, does the Eleventh Amendment apply to agencies created by compact among several states? Second, does the Eleventh Amendment apply to this specific tri-state commission? And, third, if the Eleventh Amendment is applicable, has New York State or the Interstate Commission waived its immunity from suit?

The Supreme Court has never directly addressed itself to the first problem—whether multi-state agencies in general have Eleventh Amendment protection. In Petty v. Tennessee-Missouri Bridge Commission, *supra*, 359 U.S. 275, 79 S. Ct. 785, 3 L.Ed.2d 804, the Court specifically avoided the issue. It commented (at 279, 79 S.Ct. at 789):

> "We assume *arguendo* that this suit must be considered as one against the States since this bi-state corporation is a joint or common agency of Tennessee and Missouri."

The Court then went on to hold that the immunity had been waived by reason of a Congressional condition attached to the compact that the states' agency could

---

3. "No State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State . . . ."

4. See footnote 5, *infra*.

sue or be sued.[5] Three of the Justices in the six-man majority specifically concurred in the result with the

> "understanding that we do not reach the constitutional question as to whether the Eleventh Amendment immunizes from suit agencies created by two or more States under state compacts which the Constitution requires to be approved by the Congress."

See, also, Ladue Local Lines, Inc. v. Bi-State Dev. Ag. of Mo.-Ill. Met. D. (8th Cir. 1970) 433 F.2d 131.

Fortunately, it is not here necessary to decide that constitutional problem. Even if such commissions were considered to be state agencies for Eleventh Amendment purposes, the Interstate Sanitation Commission would not qualify for such protection. As stated above, the test of whether a State organization can be sued in federal court is the presence or non-presence of the State as the real party in interest. The First Circuit, per Judge Moore, has listed a variety of factors in making such a determination: ability to sue and be sued, lack of express authority to sue, performance by the entity of an "essential government function", power to take property in the name of the State, power to take property in its own name, corporate status, lack of corporate status, financial interest of the State, and absence of State financial interest. Whitten v. State University Construction Fund, *supra*, 493 F.2d 177, 179–180. The court concluded that of these factors "ultimate state liability" is the most determinative. See, also, Forman v. Community Services, Inc., *supra*, 500 F.2d 1246, 1255–1256.

5. In *Petty*, the compact prepared by the two states and submitted to the Congress provided that respondent should have the power to build a bridge and operate ferries across the Mississippi at specified points and that it should have the power "to contract, to sue and be sued in its own name." Congress granted its consent to the compact, 63 Stat. 930, stating in a proviso:

"That nothing herein contained shall be construed *to affect, impair, or diminish any right, power, or jurisdiction* of the United States or *of any court*, department, board, bureau, officer, or official *of the United States, over or in regard to any navigable waters, or any commerce between the States* or with foreign countries, or any bridge, railroad, highway, pier, wharf, or other facility or improvement, or any other person, matter, or thing, forming the subject matter of the aforesaid compact or agreement or otherwise affected by the terms thereof." (emphasis added)

The compact in this case provides in Article XI:

1. Each of the signatory States agrees that it will prohibit the pollution of the said waters within the district in accordance with the several articles of this compact, and that it will enact suitable and adequate legislation which will accomplish effectively the objects of this compact and which will enable its officers, departments, boards, and agents to accomplish satisfactorily the obligations and duties assumed by the State under the terms of this com-

pact; and it is further agreed that the courts of the several States shall have jurisdiction to enforce as against any person, corporation, municipality, or other entity of any employee, department, or subdivision of the respective signatory States any and all provisions of this compact.

The commission shall have authority to investigate and determine if the requirements of the compact and/or the orders of the commission pursuant thereto are complied with and if satisfactory progress has not been made, to bring action in its own name in the proper court or courts to compel the enforcement of any and all of the provisions of this compact, and/or the orders of the commission pursuant thereto.

The Congressional consent to the compact, 49 Stat. 932, is as follows:

Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That the consent of Congress is hereby given to the States of New York, New Jersey, and Connecticut to enter into the compact hereinbefore recited, and to each and every part and article thereof: Provided, That nothing contained in such compact shall be construed as empowering or in any manner affecting any right or jurisdiction of the United States in and over the region which forms the subject of such compact.

Sec. 2. The right to alter, amend, or repeal this joint resolution is hereby expressly reserved.

**628**

In this case, it would appear that the Interstate Commission is sufficiently independent of New York State so as not to enjoy sovereign immunity. See, Forman v. Community Services, Inc., *supra*, and cases cited therein. The Interstate Commission has the express authority to sue and be sued. It apparently has no power to take property in its own name or in the name of the State. Although it does engage in a governmental function, on the crucial question of ultimate state liability, the compact specifically provides that the Commission is forbidden from pledging the credit of any of the three states "except by and with the authority of the legislatures thereof." ECL § 21–0501, Article V. This, of course, makes New York expressly *not* liable for the debts of the Commission.

■ Accordingly, we hold that the Interstate Commission is not the "alter ego" of the State so as to enjoy the protections of the Eleventh Amendment.

C. *Defendant Thomas Glenn*

■ Since we have held that the Interstate Commission cannot claim the protection of the Eleventh Amendment, it is certainly axiomatic that the director of this agency also fails to qualify for immunity from suit, even if sued in his official capacity.

It should be noted, however, see discussion IId, infra, that even if the Interstate Commission were within the ambit of the Eleventh Amendment, defendant Glenn's motion to dismiss on this ground would be denied.

D. *Defendant Biggane*

■ Defendant Biggane maintains that this action, brought against him in his official capacity as Commissioner of a State agency, is barred by the Eleventh Amendment. It has long been familiar doctrine, however, that the Eleventh Amendment does not prevent a federal court from directing a State official to bring his conduct into conformity with federal law. Ex Parte Young (1908) 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714; Edelman v. Jordan, supra, 415

U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662; Scheuer v. Rhodes (1974) 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90; Rothstein v. Wyman, *supra,* 467 F.2d 226. In this action, Biggane and the other defendants are charged with, among other things, violating the federal common law of nuisance.

■ While the Eleventh Amendment may affect the type of relief that can be granted against such officials, Edelman v. Jordan, *supra*, it is clear that declaratory relief and prospective injunctive relief are available. Furthermore, even if such relief were to force Commissioner Biggane to spend money from the State treasury, such an ancillary effect would be considered a permissible, and even an inevitable, consequence of the court's order. Edelman v. Jordan, *supra*, 415 U.S. at 668, 94 S.Ct. 1347, 39 L.Ed.2d 662.

■ Accordingly, Biggane's motion to dismiss on the grounds of the Eleventh Amendment is denied.

### III.

Defendants DEC, Biggane, the Interstate Commission, and Glenn all seek dismissal of the complaint on the ground that the pleading fails to state a claim upon which relief can be granted.

■ The Supreme Court has recently stated that when a federal court reviews the sufficiency of a complaint - prior to the reception of any evidence either by affidavit or admissions—its task is necessarily a limited one.

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well-established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."

Scheuer v. Rhodes, *supra*, 416 U.S. at 236, 94 S.Ct. 1683, at 1686, 40 L.Ed.2d 90. It is clear that in appraising the sufficiency of the complaint, we must follow the established rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson (1957) 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80.

 In this case, it is apparent that the plaintiffs should be permitted to produce evidence to prove its cause of action against the defendants. Although the roles of the DEC (and its commissioner) and the Interstate Commission (and its director) are somewhat tenuous in the creation of the nuisance, it seems evident that their conduct has played an important role in the perpetuation of the pollution of the River. The DEC, for example, after having found Westchester County's proposed plan to be unacceptable, took over one year to communicate that determination. The Interstate Commission, which specifically was created to prevent the pollution of waterways like the River, failed to push and pursue the other governmental entities involved as vigorously as it could have.

The defendants have all placed great emphasis on the point that some of the relief requested, if granted, would violate federal and state law. For example, the DEC argues that the setting aside of Federal and State funds for the construction of a sewage treatment plant to serve the Village of Port Chester without plans for such a plant having been completed, submitted, or approved has no legal basis whatsoever. The question of the proper scope of any equitable relief, however, must await the outcome of the question of liability. For now, it is sufficient to observe that if liability is established, there is appropriate relief that can be framed for each and every defendant in order to abate what is ad-mittedly an intolerable environmental situation.

*Conclusion*

In summary, the motion to dismiss by the New York State Department of Environmental Conservation is granted on the grounds that suit is barred by the Eleventh Amendment. The motions by all the other defendants to dismiss the complaint is denied.

So ordered.