**Gladys JAWORSKI, et al.,**

v.

**The RHODE ISLAND BOARD OF RE-GENTS FOR EDUCATION, et al.**

**Civ. A. No. 78–0202.**

United States District Court,
D. Rhode Island.

Nov. 19, 1981.

George M. Prescott, Lincoln, R. I., for plaintiffs.

Joseph V. Cavanagh, Faith LaSalle, Sp. Asst. Atty. Gen., State of R. I., Providence, R. I., for defendants.

## OPINION

PETTINE, Chief Judge.

This is an appeal by the parents of James Jaworski from an adverse state administrative decision concerning James' educational placement brought pursuant to § 615(e)(2) of the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1415(e)(2). The plaintiffs initially sought prospective relief in the form of a mandatory injunction requiring the defendant Pawtucket School Committee to fund James' placement in a private school, and a prohibitory injunction requiring state educational officials to implement certain procedural safeguards. James has now graduated from high school, and the plaintiffs' claims for prospective relief are thus moot. The central claim which remains in dispute is whether the Pawtucket School Committee should be required to reimburse James' parents for money they were allegedly required to spend because of the School Committee's failure to provide James with a free appropriate education within the Pawtucket School System. A brief discussion of the procedural history of this case is necessary to put the matter in perspective.

### I. Procedural History

James Jaworski began his schooling in the Pawtucket School System in 1967. During his first years in school James experienced considerable difficulty in the basics of education, including reading, writing and arithmetic. It was not until December 1973, however, that an examination by Dr. Eric Denhoff revealed that James suffered from a neurological impairment known generally as dyslexia. Following this diagnosis, James' parents decided in June 1974 to place him in a private educational program at the Eagle Hill School, and Mrs. Jaworski approached Mr. Leo Dolan, the Pawtucket Director of Special Education, to seek funding for such a placement. Mr. Dolan informed Mrs. Jaworski that there was a program for neurologically impaired children available within the Pawtucket School System, and therefore that funding would not be available for a private placement outside of the school system.

Dr. and Mrs. Jaworski first formally petitioned the Pawtucket School Committee for funding of James' placement at Eagle Hill on May 14, 1975. Their petition sought reimbursement for costs incurred during the 1974–1975 school year, as well as future funding for the 1975–1976 school year. A hearing on the petition was twice postponed at plaintiffs' request and was finally heard by the School Committee on September 28, 1976. The Committee concluded that it required a current evaluation of James by a physician and school psychologist to make its decision, and James' parents reluctantly agreed to such an evaluation. On February 11, 1977, after receiving the results of this evaluation and the recommendation of Special Education Director Dolan, the School Committee notified the Jaworskis that they had decided that an appropriate educational program could be afforded James within the Pawtucket School System. The Committee requested the Jaworskis to notify them if they wished to pursue such a placement. On March 11, 1977 the Jaworskis informed the Committee that they did not wish to pursue the proposal and they requested a hearing before the Committee. The Committee responded on March 16, 1977 by denying the plaintiffs' request for a hearing and advising them that they had the right to appeal to the Commissioner of Education.

The plaintiffs filed such an appeal with the Commissioner on May 17, 1977. Associate Commissioner William P. Robinson, Jr. held a hearing de novo on the parents' appeal and rendered a decision adverse to plaintiffs on August 9, 1977. The Associate Commissioner specifically found that the program offered by the School Committee was "appropriate to meet James' special needs," and that the Committee was therefore justified in declining to fund James' placement at Eagle Hill School. The Associate Commissioner's decision was affirmed by the Board of Regents for Education on April 13, 1978.

From that decision this appeal ensued pursuant to 20 U.S.C. § 1415(e)(2) and (e)(4). In addition to receiving the record of the state administrative proceedings, the Court has heard further testimony submitted by both parties, and the matter is now ready for decision.

II. The Statutory Claims

■ This case raises a number of important legal questions with respect to the proper interpretation of the Education for All Handicapped Children Act, 20 U.S.C. §§ 1401 et seq. The Court will consider only one of these issues, however, given the facts of this particular case. Since James Jaworski has graduated, all claims for prospective relief are moot, and the Court need only consider whether a retrospective award of compensatory damages is available under the EAHCA. While the question is a difficult one, after careful consideration I must conclude that damages are not generally available under the Act.

Section 615(e)(2) of the EAHCA, 20 U.S.C. § 1415(e)(2), authorizes the district courts of the United States to "receive the records of the administrative proceedings, . . . hear additional evidence at the request of a party, and, basing its decision on the preponderance of evidence, . . . grant such relief as the court determines is appropriate." The question to be considered is whether an award of damages is included within the "appropriate relief" which a court is authorized to grant. Essentially, this is a question of legislative intent. See Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979).

Some courts in interpreting Congressional intent with respect to the EAHCA have concluded that the Act generally does authorize an award of damages. Monahan v. State of Nebraska, 491 F.Supp. 1074, 1094 (D.Neb.1980), aff'd in part and rev'd in part on other grounds, 645 F.2d 592 (8th Cir. 1981); Boxall v. Sequoia Union High School Dist., 464 F.Supp. 1104, 1112 (N.D.Cal.1979). These courts have relied on the fact that the House-Senate Conference Report on the bill states that the courts can grant "all appropriate relief," and have concluded that the word "all" indicates that a damages

remedy was intended. S.Rep.No.94–455, 94th Cong., 1st Sess. 50 *reprinted in* [1975] U.S.Code Cong. & Ad.News 1425, 1480, 1503. One court has also argued that requiring a defendant school board to reimburse parents for money they wrongfully were forced to spend because of defendant's failure to provide a free appropriate education will serve the purposes of the EAHCA. Such a remedy would merely require defendant retrospectively to fulfill its duty to provide every handicapped child with an appropriate education at no cost to the child's parents. *Monahan v. State of Nebraska, supra,* at 1094.

Other courts, however, have concluded that a damages remedy is not generally available under the EAHCA. *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir. 1981), *aff'g* 495 F.Supp. 1256, 1269 (E.D.Wis.1980); *Miener v. State of Missouri,* 498 F.Supp. 944, 949 (E.D.Mo.1980); *Loughran v. Flanders,* 470 F.Supp. 110, 115 (D.Conn.1979). The most exhaustive analysis of legislative intent on this question is found in the Seventh Circuit's recent opinion in *Anderson v. Thompson, supra.* There the court concluded that both the structure of the EAHCA and its legislative history compel the conclusion that a damages remedy was not generally intended.

The court first noted that the entire structure of the Act is concerned with establishing procedural safeguards for ensuring the proper placement of handicapped children. Review in the district court was merely the last stage in a long line of such safeguards. The court concluded from the emphasis on procedure that the term "appropriate relief" was generally intended to be restricted to injunctive relief, and was not intended to create a new substantive cause of action for damages. *Id.* 658 F.2d at 1211.

The court also found support for its position in the legislative history of the Act. It suggested that when the Conference Report referred to the courts' power to grant "all appropriate relief," the conferees meant merely "to emphasize that a district judge could adopt the program offered by the school district or the program advocated by the parents, or that he could take any other action and devise any program which in his view would ensure an appropriate individualized educational program." *Id.* at 1211–1212. The Seventh Circuit also noted that the Congressional sponsors of the Act recognized the great difficulties associated with correctly diagnosing handicapped children. Congress was also well aware that budgetary constraints made it likely that it would take some time before all handicapped children could be properly placed. Given these circumstances, the court concluded that it would have been anomalous for Congress to have created a damages remedy for failure correctly to diagnose and place every handicapped child. *Id.* at 1212–1213. The court therefore concluded that a damages remedy was not generally available.[1]

In the Eleventh Amendment context, the First Circuit has also raised a number of concerns which suggest that Congress did not intend to make damages generally available under the EAHCA. The court in *Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770, 777 (1st Cir. 1981), observed that the Act envisions enforcement through the mechanism of a cut-off of federal funds in the case of noncompliance. The court suggested that:

> It would be anomalous for EHCA to provide enforcement of its requirements upon the states *both* by the withholding of funds from the state *and* by allowing private individual suits against the state

---

1. The Court noted that an award of damages would be justified in two limited situations. The Court believed that Congress would have intended such a remedy if parents had been forced to spend money because their "child's physical health would have been endangered had the parents not made alternative arrangements to those offered by the school system."

*Id.* at 1213–1214. A damages remedy would also be justified if "the defendant has acted in bad faith by failing to comply with the procedural provisions of section 615 in an egregious fashion." *Id.* The record in this case is devoid of any evidence which suggests that either of these two exceptions is applicable here.

for monetary relief at a time when the state might have been deprived of the very funds that plaintiffs sought.

*Id.* at 777.

The court further observed that:

> The vast scope of the new program, the fact that it required states to begin, often for the first time, to direct individual attention to tens, or hundreds of thousands of new beneficiaries, the fact that the Act creates priorities for implementation, also argue against the conclusion that Congress intended the states to become immediately liable to court actions for monetary claims arising out of each individual failure to satisfy the program's every rule and regulation.
>
> *Id.*

Finally, it should be noted that the EAHCA is a statute which imposes certain obligations on states as a condition for receiving federal funds. In *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694, 707 (1981), the United States Supreme Court made the following observation with respect to such statutes:

> Unlike legislation enacted under § 5, however, legislation enacted pursuant to the Spending Power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the Spending Power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." See *Steward Machine Co. v. Davis*, 301 U.S. 548, 585–598, 57 S.Ct. 883 [890–895] 81 L.Ed. 1279, 109 A.L.R. 1293 (1937); *Harris v. McRae* [448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784], supra. There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it.

Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously. Cf. *Employees v. Department of Public Health and Welfare*, 411 U.S. 279, 285, 93 S.Ct. 1614 [1618], 36 L.Ed.2d 251 (1973); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation.

(footnote omitted).

■ Congress has not spoken "with a clear voice" with respect to the imposition of a damages remedy under the Act. Consideration of this factor, along with the analysis of legislative intent in *Anderson* and the First Circuit's concerns in *Ezratty*, convinces me that the better view is that money damages are not generally available under the EAHCA.[2]

■ Plaintiffs have also asserted a right to damages under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits discrimination in any program or activity receiving federal financial assistance against any otherwise qualified handicapped individual. I need not reach the difficult issue of whether damages are available under § 504 because I find that plaintiffs' claim has not been raised in a timely fashion.

Plaintiffs' complaint does not assert a claim under the Rehabilitation Act. Indeed, the Rehabilitation Act was not even mentioned in any of plaintiffs' pleadings until plaintiffs filed their Post-Trial Memorandum. Treating this Memorandum very liberally as a Motion for Leave to Amend the Complaint pursuant to Fed.R.Civ.P. 15(a), the Court is constrained to deny the Motion.

---

**2.** The foregoing discussion applies *a fortiori* to plaintiffs' claims that damages are available under the EAHCA's statutory predecessors such as P.L. 91–230, 84 Stat. 121 (1970). These statutes did not even go so far as to create a private right of action for injunctive relief. Further, as one court has observed, "The legislative histories of these Acts share a second common trait; each is devoid of even the slightest suggestion that Congress intended for it to serve as a vehicle through which to initiate a private cause of action for damages."

*Loughran v. Flanders*, 470 F.Supp. 110, 114 (D.Conn.1979).

While leave to amend a complaint should be freely given when justice so requires, leave may be denied if allowing an amendment will result in undue prejudice to an opposing party. *Vargas v. McNamara*, 608 F.2d 15, 18 (1st Cir. 1979). The Court believes that allowing the amendment at this late date, after a trial on the merits has been completed, could operate to the serious prejudice of all defendants.

A claim under the Rehabilitation Act is very different from an appeal under the EAHCA. The administrative records of prior state proceedings are automatically reviewed under the procedures set up by the EAHCA. *See* 20 U.S.C. § 1415(e)(2). Such records, however, are admissible in an action based on the Rehabilitation Act only if they satisfy the requirements of the Federal Rules of Evidence. In the present case, the testimony of Dr. Eric Denhoff in the hearing before the Associate Commissioner of Education, on which plaintiffs heavily rely, is part of the record of plaintiffs' appeal under the EAHCA, but would be inadmissible in a civil trial of a Rehabilitation Act claim, absent a showing that Dr. Denhoff was unavailable. Fed.R.Evid. 804(b)(1).

Defendants, of course, could not have objected to the admission of Dr. Denhoff's testimony, or any other testimony, as pertaining to a claim under the Rehabilitation Act because they were unaware at trial that plaintiffs were even bringing such a claim. The potential for serious prejudice in such a situation is obvious, and for that reason, plaintiffs' belated attempt to amend their complaint may not be permitted.

III.   Due Process Claims

Plaintiffs also maintain that the actions of defendants have deprived them of procedural due process. Specifically, they attack the failure of the Pawtucket School Committee to afford them a hearing in March 1977, after the School Committee had initially determined not to fund James Jaworski's placement at Eagle Hill School. They also allege that the administrative appeals process prescribed by Rhode Island law at the time they brought this appeal violates federal statutory and constitutional requirements.

Treating the claim against the Pawtucket School Committee first, the Court finds that plaintiffs' due process rights were in fact violated. Plaintiffs were afforded a hearing before the Committee in September 1976. The Committee then sought additional evaluations of James and reached a final decision as to his placement in February 1977. Plaintiffs then requested a second hearing which would have given them the opportunity to rebut the new information on which the Committee relied in reaching its decision. That request was denied.

The Court finds that this denial violated the Regulations of the Board of Regents Governing the Special Education of Handicapped Children which were in effect at the time. The Regulations specifically provided for "[a]n opportunity to appeal to the School Committee if the decision of the Superintendent is not acceptable to the parents." Regs. § IX.1.1.4. The parents in the instant case were not given an opportunity to appeal to the Committee after an unacceptable decision had been rendered. Rather, their hearing occurred before a decision by school officials had been made. As a consequence, plaintiffs were deprived of an opportunity to rebut the information on which the School Committee relied in reaching its decision.

This Court has observed in the past that:
It is elementary that government must follow the law just as private citizens must. The government's failure to treat its citizens in accordance with applicable procedures, specified by law, deprives those citizens of due process of law. *Vitarelli v. Seaton*, 359 U.S. 535 [79 S.Ct. 968, 3 L.Ed.2d 1012] (1959); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 [74 S.Ct. 499, 98 L.Ed. 681] (1954).
*Smith v. Curtin*, No. 76–0510, at 4 (D.R.I. Jan. 7, 1977) (unpublished opinion).

It is equally elementary that the right to be heard "must be granted at a meaningful

time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) *quoting Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). In the present case, the School Committee's failure to follow procedures prescribed by state law and to provide plaintiffs with a right to be heard at a meaningful time violated their rights to due process.

Plaintiffs claim damages from this deprivation of due process. But the United States Supreme Court has made it clear that compensatory damages from procedural due process violations may not be presumed, but must be based on proof that actual injury occurred. *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Specifically, a plaintiff seeking compensatory damages must prove that if proper procedures had been followed, he would not have suffered injury. *Id.* at 260, 98 S.Ct. at 1050. Absent such proof, only nominal damages may be awarded. *Id.* at 266–67, 98 S.Ct. at 1053–1054.

In the present case, plaintiffs have failed to show in any way that, if they had been given a second hearing, a different decision would have been reached or that plaintiffs would have been spared any injury. Thus, the Court may only award plaintiffs nominal damages of one dollar. *Id.* at 267, 98 S.Ct. at 1054.

Plaintiffs' second due process claim attacks the State of Rhode Island's requirement that decisions by the Commissioner of Education concerning educational placement of the handicapped must be appealed to the Board of Regents. Plaintiffs argue that this requirement creates a protracted appeals process that is inconsistent with federal statutory and constitutional requirements.

During the pendency of this litigation, the State of Rhode Island amended its administrative appeals procedures in order to conform with federal requirements. Plaintiffs concede that their claims for prospective relief are now moot. As for damages, plaintiffs have again failed to show any

injury to them which would have been avoided had proper procedures been followed. Compensatory damages, therefore, may not be awarded. Moreover, the Court need not reach the difficult issues of whether the appellate procedure formerly required in Rhode Island violated due process so as to justify an award of nominal damages, or even whether such an award can be made against the State given the restrictions of the Eleventh Amendment. Plaintiffs have never asserted a claim for damages against the state defendants in this action, either in their original complaint or by way of any amendment. An award of nominal damages in such circumstances would be inappropriate.

Judgment will be entered accordingly.