Adrian VANLAARHOVEN, Plaintiff,

v.

Frank J. NEWMAN, in his capacity as President of the University of Rhode Island; William Tirpaeck, Dr. Douglas Rosie, and Nicholas Long in their capacities as employees of the University of Rhode Island; and The University of Rhode Island, Defendants.

Civ. A. No. 80–0251 S.

United States District Court, D. Rhode Island.

April 20, 1983.

Delphis R. Jones, No. Kingston, R.I., for plaintiff.

Nicholas Trott Long, Kingston, R.I., for defendants.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This 42 U.S.C. § 1983 action is based on defendants' refusal to classify plaintiff as a Rhode Island resident, thereby depriving him of lower tuition charges while enrolled at the University of Rhode Island ("URI").[1] The parties have submitted this matter to the Court on an agreed statement of facts and on briefs, waiving jury trial. The following decision therefore constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

The facts can be succinctly summarized. Prior to the fall of 1973, plaintiff lived with his parents in New York, where he attended secondary school. That autumn, he enrolled at URI, declaring himself to be a resident of New York and paying tuition at the higher out-of-state rate. Due to illness, he withdrew from URI during the fall semester of the 1974–75 school year, but re-enrolled for the spring term (again as a nonresident student).

While absent from URI, plaintiff decided to switch his residency from New York to Rhode Island. He registered to vote in the City of Pawtucket (where he was then living), obtained a Rhode Island drivers' license and applied for financial aid from the Rhode Island Higher Education Authority. His parents declared him emancipated and desisted, from that point forward, from claiming him as a dependent on their federal income tax returns.

During the summer of 1975, plaintiff applied to URI for reclassification, commencing in the fall term of the 1975–76 school year, as a Rhode Island resident student for purposes of registration and fee assessment. That initial request was denied in December, 1975. His administrative appeal of that decision was likewise rejected in early 1976.

Plaintiff continued to attend URI and to pay out-of-state tuition charges, although he was in "communication" with URI's Dean of Admissions, Marcus Rand, "as to why his repeated request for in-state status was denied." He did not formally renew his petition for a change in classification, however, until May 23, 1978. On that date, he submitted two such applications, one seeking a retrospective residency classification effective September, 1976 and the other requesting such reclassification retroactive to January, 1978. Rand denied both petitions. At plaintiff's request, Rand forwarded the petitions to the URI Board of Residency Review ("Review Board"). The Review Board advised plaintiff, by letter, of a hearing date for consideration of his petitions. Plaintiff did not receive this letter, however, as he had changed addresses. There is nothing in the record which suggests that URI knew or should have known of this address change. Plaintiff made no further attempt to schedule a hearing or otherwise to pursue his administrative appeals.

In this action, plaintiff does not contest the right of URI to charge non-residents a higher rate of tuition than that levied as to residents. *See Starns v. Malkerson,* 326 F.Supp. 234 (D.Minn.1970), *aff'd,* 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971). Neither does he challenge the adequacy of URI's procedures for determining residency, *see Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), nor contend that he was the innocent victim of an impermissible presumption anent residency. *See Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). Rather, his complaint alleges only that defendants should have classified him as a Rhode Island resident, based on the evidence before them

---

1. The record is unclear as to the exact ramifications of the tuition structure at URI beyond the fact that Rhode Island residents pay less for tuition charges than do non-resident students.

in 1975 and 1978. Such a claim is, in essence, one for violation of due process: defendants are required to follow the standards and procedures which they have promulgated. *Vitarelli v. Seaton,* 359 U.S. 535, 540, 545, 79 S.Ct. 968, 973, 975, 3 L.Ed.2d 1012 (1959); *Jaworski v. Rhode Island Board of Regents for Education,* 530 F.Supp. 60, 65–66 (D.R.I.1981).[2] For this alleged due process violation, plaintiff seeks declaratory and injunctive relief,[3] and money damages.

▉▉▉ Because plaintiff has sued defendant Newman in his official capacity as President of URI, defendants Tirpaeck, Rosie and Long in their official capacities as URI employees,[4] and URI itself, the first issue in this case is whether the Eleventh Amendment to the United States Constitution[5] grants immunity from suit in federal court to any of the foregoing defendants.[6] It is well established that the Eleventh Amendment bars not only suits in which the state is a named defendant, but also suits in which the state, although not named, is the real party in interest, unless the state has consented to, or waived its immunity from, such a suit. *RIAACLU,* 553 F.Supp. at 763. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978). The general rule is that an action by private parties seeking to impose a liability which must be paid from public funds is, absent such consent or waiver, barred by the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. at 663, 94 S.Ct. at 1355. Such immunity may also apply to state officials sued in their representative or official capacities, to the extent that any judgment must be paid from state funds. *See id.* at 664–71, 94 S.Ct. at 1356–59; *RIAACLU,* 553 F.Supp. at 766–67 n. 11. The question in each case is whether the relief constitutes permissible prospective redress ancillary to an equitable remedy, not barred by the Eleventh Amendment, *Quern v. Jordan,* 440 U.S. 332, 346–47, 99 S.Ct. 1139, 1147–48, 59 L.Ed.2d 358 (1980); *Gay Student Services v. Texas A & M University,* 612 F.2d 160, 165 (5th Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980), or a retroactive award requiring the state to pay funds from the public fisc. *Florida Depart-*

---

**2.** In his brief to this Court, plaintiff's attorney also argues that the Board of Regents for URI ("Regents") did not have the power to define residency. The Court need not answer this contention for the reasons discussed *infra,* but does note that R.I.Gen. Laws §§ 16–59–1 and 16–59–4 give the Regents broad powers to operate URI. *Cf. Lister v. Hoover,* 655 F.2d 123, 128 (7th Cir.1981), discussing the power of state agencies to vary the definition of residency depending on the program at issue. "With apologies to Gertrude Stein, a resident is not a resident is not a resident." *Id.* Plaintiff's counsel also argues that the Regents' definition violates the Rhode Island Constitution, a patently frivolous position.

**3.** Plaintiff seeks, *inter alia,* an order enjoining URI "from denying him a degree from the University based solely upon the fact that he has not paid the outstanding bills accrued against him as a result of its determination that he was not a resident student." It is unclear from the evidence before the Court whether plaintiff has since received his diploma.

**4.** Nowhere in the record are Tirpaeck, Rosie and Long identified other than as URI employees. Presumably they are the three members of the Review Board. Long, in any event, is known to the Court as URI's general counsel.

**5.** The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any Foreign State.

The Eleventh Amendment includes suits against the state by its own citizens. *Fla. Dep't of State v. Treasure Salvors, Inc.,* —— U.S. ——, 102 S.Ct. 3304, 3314 n. 17, 73 L.Ed.2d 1057 (1982). *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *R.I. Affiliate Am. Civil Liberties Union v. R.I. Lottery Comm'n,* 553 F.Supp. 752, 763 n. 6 (D.R.I.1982) ("*RIAACLU*").

**6.** Although the parties did not raise the Eleventh Amendment issue, instead arguing the case on the merits, consideration of the issue is not foreclosed. The Eleventh Amendment defense sufficiently partakes of the nature of jurisdictional bar that it may be raised at any point of the proceedings. *Fla. Dep't of State v. Treasure Salvors, Inc.,* —— U.S. at ——, 102 S.Ct. at 3314 n. 18, *citing Edelman v. Jordan,* 415 U.S. at 678, 94 S.Ct. at 1363.

ment of *State v. Treasure Salvors, Inc.,* —— U.S. at ——, 102 S.Ct. at 3317; *Quern v. Jordan,* 440 U.S. at 346–47, 99 S.Ct. at 1147–48. Of course, if the agency is not an alter ego of the state for Eleventh Amendment purposes these precepts become academic, and its employees and agents forfeit any such protection as well.

Factors to be considered in determining whether an agency is an arm of the state include:

the agency's capacity to sue and be sued, the extent to which an agency has autonomy over its operations, whether the agency performs a traditional governmental function, and whether a judgment against an agency would be paid from the state treasury.

*RIAACLU,* 553 F.Supp. at 763. *See George R. Whitten, Jr., Inc. v. State University Construction Fund,* 493 F.2d 177, 179–80 (1st Cir.1974). The dispositive factor is "ultimate state liability", which rests on "the degree to which the organization is financially dependent upon the [s]tate, and the extent to which the organization performs a [s]tate obligation or function." *Id.* at 180. The nature of the entity created by state law, *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977), the financial relationship of that body to the state, and the extent to which it operates independently from the state are relevant to a consideration of state liability. *RIAACLU,* 553 F.Supp. at 764. "Only where an agency functions without meaningful fiscal and operational autonomy from the state can it partake of the state's Eleventh Amendment immunity." *Id.* See *Miller-Davis Co. v. Illinois State Toll Highway Authority,* 567 F.2d 323, 327 (7th Cir.1977).[7]

Under Rhode Island law, URI is governed by a Board of Governors for Higher Education (the "Board") appointed by the governor for three year terms. R.I. Gen. Laws §§ 16–59–1 and 16–59–2 (1981 Amendment).[8] Eight of the eleven members of the Board are "public members" who "best serve the entire needs of the state", *id.,* and who may be removed from office for cause only. *Id.* at § 16–59–3. Removal solely for partisan or personal reasons unrelated to capacity or fitness for office is expressly forbidden. *Id.* The Board is constituted as a public corporation, "empowered to sue and be sued in its own name," and to exercise all the powers "usually appertaining to public corporations entrusted with control of post secondary educational institutions." *Id.* at § 16–59–1. Among these enumerated powers is the power "to hold and operate... property in trust for the state; to acquire, hold and dispose of said property and other like prop-

---

**7.** As the Fifth Circuit Court of Appeals recently noted:

The majority of decisions concerning the eleventh amendment status of state universities have concluded the institutions involved were arms of the state. Yet, each situation must be addressed individually because the states have adopted different schemes, both intra and interstate, in constituting their institutions of higher learning.

*United Carolina Bank v. Bd. of Regents,* 665 F.2d 553, 557 (5th Cir.1982). *Accord Soni v. Bd. of Trustees of Univ. of Tenn.,* 513 F.2d 347, 352 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976). *Compare id.* (holding that a back pay award against the Board of Regents of Stephen F. Austin State University and its president, in his official capacity, was barred by the Eleventh Amendment) *with Goss v. San Jacinto Junior College,* 588 F.2d 96 (5th Cir.1979), and *Samuel v. University of Pittsburgh,* 538 F.2d 991 (3rd Cir.

1976), both of which found colleges not to be state instrumentalities.

**8.** Prior to the 1981 amendments, and during the period when the events of which plaintiff complains took place, URI was governed by the Regents. The Regents' powers and duties were transferred to the Board by the enactment of R.I.P.L.1981, ch. 32, § 8. The Board was deemed to constitute a continuation of the Regents:

for the purpose of succession to all rights, powers, duties and obligations of the Regents... except as otherwise provided by this act, with the same force and effect as if such functions, powers and duties had not been assigned or transferred.

*Id.* For all purposes germane to this proceeding, the Regents and the Board have the same powers and duties and may be considered as a single entity. This includes the right to sue and be sued. *See* text, *post.*

erty as deemed necessary for the execution of its corporate purposes." *Id.*

The Board prepares the annual budget for URI, although the Rhode Island General Assembly must appropriate the funds. *Id.* at § 16–59–9. Once state funds are appropriated, however, the Board has plenary control over those monies: the Board may reallocate the funds between the agencies under its jurisdiction, *id.,* and the Board is specifically exempted from certain budgetary constraints and restrictions applicable to other state agencies. *Id.* at §§ 16–59–14, 16–31–11. The preaudit of all expenditures under authority of the Board by the state controller is to be "concerned only with the legality of the expenditure and the availability of the funds." *Id.* at § 16–31–10. "[I]n no event shall the state controller interpose his judgment regarding the wisdom or expediency of any item or items of expenditure." *Id.* Finally, the Board is given exclusive control over all receipts "from all sources other than state appropriations", which are kept by the state treasurer in a separate fund and which are paid out by him upon Board order, without the necessity of General Assembly appropriation or reappropriation. *Id.* at §§ 16–31–8, 16–59–14.

Based on the factors set forth in *George R. Whitten, Jr., Inc. v. State University Construction Fund,* 493 F.2d at 179–80, and in *RIAACLU,* 553 F.Supp. at 764–65, this Court must conclude that URI is not an alter ego of the state for Eleventh Amendment purposes. While URI performs a "traditional governmental function" in providing a college education for to Rhode Islanders at relatively modest cost, the statutory scheme graphically illustrates the General Assembly's design that the Board and URI function independently of state government. The Board has the power to sue and be sued in its own name, to control and dispose of property, and to manage its own budget. Most significant for Eleventh Amendment purposes, it has exclusive control over the emoluments which it receives from sources other than the public coffers. Such funds, in the form of tuition payments, endowments, gifts, and the like, are not commingled with state funds and may be drawn upon only by the Board. This provision gives the Board—and URI—a not-inconsiderable amount of economic and operational autarchy. *Id.* Moreover, it signals that any judgments against URI need not be paid out of state funds, nor be subjected to scrutiny by the General Assembly prior to satisfaction thereof. Any award of damages would not, therefore, require tampering with the state budget, nor would such an award directly interdict the state's fiscal autonomy. URI—and the Board— thus stand on a more independent footing than the defendants in *United Carolina Bank v. Board of Regents,* 665 F.2d at 561, in which defendants were held immune under the Eleventh Amendment, largely because all funds available to the university, even gifts and bequests, were to be expended in accordance with state law and were subject to state budgetary planning. *Id.*

■ Additionally, assuming *arguendo* that the state was ultimately liable for judgments against URI, *see George R. Whitten, Jr., Inc. v. State University Construction Fund,* 493 F.2d at 179–80, Rhode Island has waived Eleventh Amendment immunity for the Board and URI through the statutory provision giving the Board the right "to sue and be sued in its own name. . . ." R.I.Gen. Laws § 16–59–1 (1981 Amendment). Similar provisions have been interpreted as waivers of immunity for other state universities. *See Soni v. Board of Trustees of University of Tennessee,* 513 F.2d at 353; *Hostrop v. Board of Junior College District No. 515,* 523 F.2d 569, 577 n. 3 (7th Cir.1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976). The Court is both mindful of, and sensitive to, the principle that waiver of a constitutional right must appear clearly, and that any such waiver may not be lightly inferred. *Edelman v. Jordan,* 415 U.S. at 673, 94 S.Ct. at 1360; *Marrapese v. State of Rhode Island,* 500 F.Supp. 1207, 1212 (D.R.I. 1980). The Supreme Court of Rhode Island has explicitly held, however, that a statutory provision giving a state agency the right to sue and be sued is of central import in

ascertaining a waiver of sovereign immunity. *Rhode Island Turnpike and Bridge Authority v. Nugent,* 95 R.I. 19, 182 A.2d 427, 432 (1962). By including such language in the enabling legislation establishing the Board, the General Assembly must be presumed to have consciously waived URI's Eleventh Amendment immunity upon the passage of R.I.Gen. Laws § 16–59–1. *See Marrapese v. State of Rhode Island,* 500 F.Supp. at 1223.

■ Having concluded that URI, and consequently its president and employees, do not enjoy Eleventh Amendment immunity, the Court must next resolve a statute of limitations question posed by plaintiff's 42 U.S.C. § 1983 claim, insofar as that claim is premised on defendants' denial of his 1975 petition for residency determination. In divining the statute of limitations applicable to a § 1983 claim, federal courts are to look to the state statute or remedy most analogous to the civil rights claim. *Gashgai v. Leibowitz,* 703 F.2d 10 at 11 (1st Cir.1983); *Burns v. Sullivan,* 619 F.2d 99, 105 (1st Cir.), cert. denied, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). Unlike many § 1983 claims, which are typically in the nature of tortious wrongs and therefore governed by Rhode Island's three year statute of limitations, *see Walden, III, Inc. v. State of Rhode Island,* 576 F.2d 945, 946 (1st Cir.1978); *Pearman v. Walker,* 512 F.Supp. 228, 234 (D.R.I.1981), plaintiff's claim is essentially one for breach of contract. URI, through its "Regulations Defining Resident and Non-Resident students at the University of Rhode Island" (the "Regulations") entered into a contract with URI students by which URI was to determine whether a student qualified for residency status (and thus, lower tuition rates). Defendants allegedly breached this contract by applying the regulations to plaintiff in an arbitrary and

capricious manner. Accordingly, the applicable statute of limitations is that set forth in R.I.Gen. Laws § 9–1–13(a) (1965 Amendment). Plaintiff's claim based on defendants' 1975 determination of his non-residency status was plainly filed within the generous ten year limitation period granted by this statute.

■ Turning to the merits of plaintiff's claim anent defendants' 1975 decision, it is impossible to conclude that plaintiff has carried his burden of proving that defendants applied the Regulations to him in an arbitrary and capricious manner.[9] According to Regulation ¶ 7, individuals from another state, such as plaintiff, who enroll for a full program at URI,

> shall be presumed to be in Rhode Island primarily for educational purposes and will be considered not to have established residence in Rhode Island. Continued presence in Rhode Island during vacation periods or occasional interruptions to the course of study will not, of itself, overcome the presumption.

"Emancipated Students" who are not residents of the state at the time of emancipation may nevertheless be entitled to a residency classification if they establish a "bona fide residence" in the state for one year immediately preceding the first class day of the first term of registration as a URI student. Regulation ¶ 5. "Residence" is defined as "a student's true, fixed and permanent home and place of habitation." *Id.* at ¶ 3. Ownership of real or personal property within the state or payment of municipal or state taxes may be supportive evidence of bona fide residence. *Id.* at ¶ 9.

Taken together, these regulations mean that a non-resident student may acquire residency status if, after becoming emanci-

---

9. Indeed, one could argue that neither plaintiff's claim based on the 1975 decision, nor his claim based on the 1978 denial, rise to the level of a violation of 42 U.S.C. § 1983. The First Circuit recently reiterated its salutary rule that:

> "mere breach of a contractual right is not a deprivation of property without *constitutional* due process of law. . . . Otherwise, virtually every controversy involving an alleged

breach of contract by a government or a governmental institution or agency or instrumentality would be a constitutional case." *Arena DelRio, Inc. v. Gonzalez,* 704 F.2d 27 at 28 (1st Cir.1983), quoting *Medina Jimenez v. Almodovar,* 650 F.2d 363, 370 (1st Cir.1981). Out of an abundance of caution, however, the Court has elected to dispose of this case on the merits.

pated as defined by Regulation ¶ 4, he or she establishes a bona fide residence in Rhode Island for at least one year. If the *raison d'etre* for a student's presence in Rhode Island is attendance at URI, however, the student will bear a heavy burden in overcoming presumptive non-residency status. *Id.* at ¶ 7.

When plaintiff initially applied for in-state residency status at URI in the summer of 1975, he had, only the term before, classified himself as a New York, non-resident student. Moreover, it was not until this time that plaintiff took any discernible steps to achieve "Emancipated Student" status. According to the Regulations, therefore, plaintiff could not be classified as a resident student for the fall 1975 term because neither his emancipation nor his "bona fide" residency in Rhode Island had existed for more than one year. Plaintiff has introduced no evidence indicating that the Regulations were applied to him in a vagarious, whimsical, uneven or capricious manner. Given that the Regulations were a valid exercise of the Board's authority, *see* note 2 *supra*, plaintiff's § 1983 claim based on defendants' 1975 determination must fall.

 Plaintiff's second claim revolves around his attempt, in 1978, to convince defendants retroactively to reclassify him. This claim must also topple of its own weight.[10] Regulation ¶ 12 specifically states:

> Any student who has been classified as a Non-Resident Student and who claims that his status has changed during his attendance may request the Dean of Admissions for classification as a Resident Student, submitting relevant evidence in support of his claim. *If the Dean of Admissions determines that the claimant has become a resident he shall be classified as a Resident Student effective with the beginning of the term next following*

> *the Dean of Admissions determination.* A student may not request a change of classification more than once in any semester.

Emphasis added.

The foregoing Regulation adequately evinces that petitions for reclassification of residency status are prospective only. No provision is made by URI for the retroactive reclassification of students (nor does the Constitution mandate that such provision be made), yet that was precisely what plaintiff sought in his twin 1978 applications. For that reason alone, defendants were justified in denying him residency status.

The plaintiff has failed to prove a claim upon which relief should be granted. The complaint is, therefore, dismissed with prejudice. Judgment for the defendants for costs shall enter accordingly.

SO ORDERED.

---

10. Defendants' argument that the Court should decline to exercise its jurisdiction over this claim because plaintiff failed to exhaust his administrative remedies is devoid of merit. The Supreme Court has unequivocally held that exhaustion of state administrative remedies is not a prerequisite to a federal civil rights suit under § 1983. *Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496, 102 S.Ct. 2557, 2567, 73 L.Ed.2d 172 (1982). *See also RIAA-CLU*, 553 F.Supp. at 766 n. 10.