**UNIVERSITY OF RHODE ISLAND, Plaintiff,**

v.

**A.W. CHESTERTON COMPANY, Defendant.**

**Civ. A. No. 89–0342 L.**

United States District Court, D. Rhode Island.

Oct. 12, 1989.

---

**5.** *Restating Kulko v. California Superior Court,* 436 U.S. at 94–95, 98 S.Ct. at 1698.

Mary E. Kennard, Gen. Counsel, University of Rhode Island, Kingston, R.I., Merlyn P. O'Keefe, Packer & O'Keefe, Peace Dale, R.I., for plaintiff.

Patridge, Snow & Hahn, Steven E. Snow, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on plaintiff's motion to remand to the Rhode Island Superior Court sitting in Washington County where this action was originally initiated. The University's complaint seeks $100,000 in damages for injury to its property which allegedly resulted from its use of a specific type of paint purchased from the defendant A.W. Chesterton Company.

On or about May 31, 1989, defendant filed a petition in Superior Court for removal of this case to the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1441(a). The defendant, a citizen of Massachusetts, contends that this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because of diversity of citizenship and amount in controversy. The University asserts that it is merely the alter ego of the State of Rhode Island and therefore is not a citizen of Rhode Island for purposes of diversity jurisdiction. The Court, after having heard arguments on the motion to remand, took the matter under advisement. The motion is now in order for decision.

## DISCUSSION

■ The issue raised by this motion is whether the University of Rhode Island is a citizen of the State of Rhode Island for the purposes of diversity jurisdiction conferred upon the federal courts by 28 U.S.C. § 1332. It is well settled that a state is not a "citizen" for purposes of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973); *Postal Telegraph Cable Company v. Alabama*, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894). It is equally well settled, however, that a political subdivision of a state, unless it is simply "the arm or *alter ego* of the State," is a citizen of the state for diversity purposes. *Moor*, 411 U.S. at 717, 93 S.Ct. at 1800 (citation omitted). Thus, in a suit involving a state agency, the crucial question in determining whether diversity exists is whether the agency is the arm or alter ego of the state, thereby making the state the real party in interest. *See Northeast Federal Credit Union v. Neves*, 837 F.2d 531, 533 (1st Cir.1988). In light of Judge Selya's ruling when he was on this Court that the University of Rhode Island is not the alter ego of the state for Eleventh Amendment purposes, *Vanlaarhoven v. Newman*, 564 F.Supp. 145 (D.R.I.1983), this writer must now conclude that the state is not the true party in interest (plaintiff) in this case and therefore that the University is a citizen of Rhode Island subject to the diversity jurisdiction of the federal courts.

Plaintiff acknowledges that in *Vanlaarhoven*, Judge Selya expressly rejected the same argument proffered here that the University is nothing more than the alter ego of the state. Although the *Vanlaarhoven* case grew out of the University's failed attempt to shield itself from suits in federal court based upon Eleventh Amendment sovereign immunity, the holding is directly relevant to the case *sub judice* because the "alter ego" test employed in Eleventh Amendment cases is "pretty much the same" as that employed for the purpose of determining diversity jurisdiction. *Northeast Federal Credit Union v. Neves*, 837 F.2d at 533–34.

The factors to be considered in determining whether an agency is an arm of the state include:

> the agency's capacity to sue and be sued, the extent to which an agency has autonomy over its operations, whether the agency performs a traditional governmental function, and whether a judgment against an agency would be paid from the state treasury.

*Vanlaarhoven*, 564 F.Supp. at 148; *R.I. Affiliate, American Civil Liberties Union*

*Inc. v. R.I. Lottery Commission,* 553 F.Supp. 752, 763 (D.R.I.1982); *George R. Whitten, Jr., Inc. v. State University Construction Fund,* 493 F.2d 177, 179–80 (1st Cir.1974). Judge Selya observed that the dispositive factor is "ultimate state liability", which rests on "the degree to which the organization is financially dependent upon the [s]tate, and the extent to which the organization performs a [s]tate obligation or function."

*Vanlaarhoven,* 564 F.Supp. at 148 (citing *Whitten,* 493 F.2d at 180). In addition, he held in *Vanlaarhoven* that "[t]he nature of the entity created by state law," (citation omitted), "the financial relationship of that body to the state, and the extent to which it operates independently from the state are relevant to a consideration of state liability." *Id.*

After careful consideration of all of these factors, Judge Selya concluded in *Vanlaarhoven* that the University of Rhode Island was not simply an arm of the state. The University now suggests that the *Vanlaarhoven* case has lost its vitality due to the subsequent repeal of R.I.Gen.Laws §§ 16–31–1 through 16–31–15 by 1988 R.I.Pub. Laws ch. 84 §§ 52 and 121. A careful review of any substantive changes in the law resulting from the repeal of the above-mentioned statutes and the enactment of new provisions establishes that plaintiff's assertion is without merit. Consequently, Judge Selya's lengthy description of the fiscal relationship between the University and the State of Rhode Island is as accurate today as when it was written in 1983 (although the statutory citations have changed as a result of the aforementioned Public Laws) and his conclusion as to the independent status of the University remains valid.

As was the case in 1983 when Judge Selya wrote the *Vanlaarhoven* opinion, the University is governed by a Board of Governors for Higher Education (the "Board"). R.I.Gen.Laws §§ 16–32–2 and 16–59–1 (1988). The Board is constituted as a "public corporation, empowered to sue and be sued in its own name," and "to exercise all the powers ... usually appertaining to public corporations entrusted with control of postsecondary educational institutions and functions." *Id.* at § 16–59–1(a). The Board is empowered to hold and operate property in trust for the state and "to acquire, hold, and dispose of said property ... as deemed necessary for the execution of its corporate purposes." *Id.* at § 16–59–1(b).

The fiscal relationship between the University and the State of Rhode Island is also the same today as it was in 1983. Thus, although the Rhode Island General Assembly must appropriate funds for the support and maintenance of the University, it remains true that once the funds are appropriated, the Board has plenary control over those monies: the Board may reallocate the funds between the agencies under its jurisdiction, *id.* at § 16–59–9(a), and the Board is specifically exempted from certain budgetary constraints and restrictions applicable to other state agencies. *Id.* at § 16–59–21. In addition, Rhode Island law provides that the office of higher education and the institutions of public higher education shall have working capital accounts and carry forward any unexpended balances for all fiscal years from 1984–85 through 1988–89 to the next fiscal year, "provided that the use of this carry-forward is limited to expenditures for non-recurring items such as equipment, library material, or other capital expenditures." *Id.* at § 16–59–9(b).

Under both the current and the former law, the preaudit of all expenditures under authority of the Board by the state controller is to be "concerned only with the legality of the expenditure and the availability of the funds." *Id.* at § 16–59–20. "[I]n no event shall the state controller interpose his or her judgment regarding the wisdom or expediency of any item or items of expenditure." *Id.* Finally, the Board is given exclusive control over all receipts "from all sources other than state appropriations", which are kept by the General Treasurer of the state in a separate fund and which are paid out by the Treasurer "upon the order of the board, without the necessity of appropriation or reappropriation by the general assembly." *Id.* at § 16–59–18.

■ The preceding recitation of the current state law makes clear that there has

been no material change since Judge Selya issued his 1983 opinion in *Vanlaarhoven* in the General Assembly's design and plan that the University function independently of the state government. The University has the power to sue and be sued in its own name, to control and dispose of property and to manage its own budget. Most significantly, it is clear that the University will have the right to control and retain the funds which it seeks to recover as plaintiff in this litigation. If the State of Rhode Island were the real party in interest, any money recovered as a result of this law suit would go to the state's general fund. That certainly was not the result intended by the University when it filed this complaint in state court.

The University thus has a considerable amount of economic and operational autarchy and stands on a much more independent footing than the plaintiff in *University of Tennessee v. United States Fidelity and Guaranty Company*, 670 F.Supp. 1379 (E.D.Tenn.1987). This Court rejects the urgings of plaintiff that it follow the district court in Tennessee which held that its state university was an "arm, agency or *alter ego* of the State for diversity of citizenship purposes." *Id.* at 1387. Clearly there, the legislature exercised more direct control over the University and any revenues received by it from any source were to be "deposited in a single co-mingled bank account, as authorized by the legislature." *Id.* at 1384 (citing Tenn.Code Ann. § 9–4–303 (1987)).

## CONCLUSION

For the reasons stated above, this Court determines that the University of Rhode Island is not merely an alter ego of the State but rather is a corporate entity subject to diversity jurisdiction under 28 U.S.C. § 1332 as a citizen of the State of Rhode Island. Accordingly, the motion to remand is denied.

*It is so Ordered.*